Revised August 30, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 99-40539

---

RONFORD LEE STYRON, JR.,

Petitioner-Appellant,

VERSUS

GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

August 15, 2001

Before HIGGINBOTHAM, JONES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Ronford Lee Styron, Jr., seeks a certificate of appealability ("COA") on twelve issues to appeal the district court's denial of his application for habeas corpus and seeks relief from the denial of his petition for habeas corpus. The district court considered and rejected a certificate on these twelve issues although it granted a COA on four other issues. For the reasons that follow,

1

we deny Styron's requests for a COA, and we affirm the denial of habeas relief.

## I. Facts and Procedural History

Appellant Ronford Lee Styron, Jr., was convicted of the capital murder of his eleven-month old son, Lee Hollace Styron, and sentenced to death. The medical evidence introduced at trial indicated that the victim died as a result of subdural hemorrhaging caused by trauma to the head. The evidence revealed that the child had suffered at least three distinct blows to his head, any one of which could have caused his death. Medical testimony indicated that the blows appeared to have been inflicted contemporaneously. Styron testified that he punched the victim in the head one time and did not offer any explanation as to how the victim received multiple bruises on his head.

Other medical evidence revealed the victim sustained retinal hemorrhages consistent with repeated episodes of shaken-baby trauma and multiple rib fractures within at least two weeks prior to his death. Testimony established that Styron squeezed the victim's stomach approximately three weeks before his death. Other testimony revealed that Styron had on numerous occasions physically abused the victim. The child had been taken to the hospital on three prior occasions: once for a cut lip, once for a broken leg, and once for treatment of a seizure disorder.

Styron was indicted by the grand jury of the 75th District

2

Court of Liberty County, Texas. Count I of the indictment alleged that Styron, on or about October 23, 1993, in Liberty County, Texas, intentionally and knowingly caused the death of Lee Hollace Styron, an individual under six years of age, by striking and hitting the child's head with his fist, by causing the child's head to strike and hit an object, and by manner and means unknown. Count II of the indictment charged Styron with murder, alleging essentially the same conduct as did Count I. Count III alleged injury to a child. The 75th District Court found Styron to be indigent and appointed Walter F. Fontenot to represent him on November 2, 1993.

At the request of the State, without notice to Styron or his attorney and without a hearing, the action was transferred by the 75th District Court to the 253rd District Court of Liberty County. On January 4, 1994, the 253rd District Court, on Styron's motion, appointed Gary W. Bunyard as additional counsel. On January 5, 1994, Styron filed a pre-trial motion to quash the indictment contending that the government manipulated the transfer to secure a more favorable forum in which to prosecute the action. On May 10, 1994, after a hearing, the trial court denied the motion to quash.

Styron was tried before a jury upon a plea of not guilty. His defense was based upon a lack of intent to harm or to kill the child. The defense presented evidence that Styron was in fact a loving father to the victim; however, the jury convicted Styron of

3

capital murder on October 24, 1994.

On October 27, 1994, the punishment phase of the trial was presented to the jury. The State produced numerous witnesses who testified about their knowledge of Styron's reputation and behavior. Four witnesses testified of his propensity to instigate fights. One witness testified that Styron provoked a fight with a boy who could not fight back because of a bad arm, and that Styron hit the boy several times before the witness grabbed Styron. Styron's high school principal and assistant principal both testified that he had a reputation for violence. A Dayton police officer, Shannon Spear, testified that Styron had violently attacked another boy while in the seventh grade, attacked a man on a freeway, and punched his sergeant while in the Army.

Curtis Wills, a psychologist called as a witness by the defense, testified that he could not predict whether Styron was likely to commit future criminal acts. On cross-examination, Wills testified that the results of the Minnesota Multiphasic Personality Inventory (MMPI) indicated that Styron was hostile, was aggressive, and was a person who harbored grudges. Wills further testified that Styron was the type of person who tends to be diagnosed with an anti-social personality.

Dr. Gripon, a psychiatrist, testified for the State. After a review of the offense reports, Styron's statements, and the results of the MMPI, in response to a hypothetical question Dr. Gripon testified that in his opinion Styron was a continuing threat to

4

commit future acts of violence.

After the hearing, the jury answered affirmatively the first special sentencing issue as to whether Styron posed a continuing threat to society. The jury answered negatively the second special sentencing issue as to whether mitigating circumstances warranted a sentence of life imprisonment rather than the imposition of a death sentence. Accordingly, the trial court sentenced Styron to death in accordance with Texas law.

Styron appealed to the Texas Court of Criminal Appeals. The conviction and sentence were affirmed in an unpublished opinion issued October 30, 1996. Styron v. State, No. 72,001 (Tex. Crim. App. 1996). The Court of Criminal Appeals appointed James F. Keegan to represent Styron on state habeas corpus review. Application for writ of habeas corpus was filed, raising forty-three grounds for relief. Ex parte Styron, No. 20,278-A. Without a hearing on the state writ, the state trial court adopted the findings of fact and conclusions of law submitted by the State and recommended that relief be denied. The Court of Criminal Appeals, without discussion or analysis, adopted the trial court's findings and conclusions in a one-page opinion and denied habeas corpus relief in an unpublished order. Ex parte Styron, No. 37,058-01 (Tex. Crim. App. 1998).

Styron filed a federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The United States District Court for the Eastern District of Texas denied his motion for summary

judgment and writ of habeas corpus, lifted the stay of execution, and granted respondent's motion for summary judgment. <u>Styron v. Johnson</u>, No. 6:98 CV 338 (E.D. Tex. 1999). The district court issued COA on four of twenty-one issues requested by Styron.

## II. Application for COA

### A.  Issues and Standard of Review

Styron now seeks from this court COA for twelve additional issues on which to appeal the district court's denial of habeas relief. Since Styron filed his habeas application in the district court after April 24, 1996, we apply the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Green v. Johnson</u>, 116 F.3d 1115, 1119-20 (5th Cir. 1997). The AEDPA provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -- (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . ." 28 U.S.C. § 2253(c)(1)(A). Only if the applicant makes a "substantial showing of the denial of a constitutional right" may a COA issue, and any such COA shall indicate the specific issue or issues that satisfy this showing. <u>Id</u>. § 2253(c)(2). "A 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the

6

questions are adequate to deserve encouragement to proceed further.'" Drinkard v. Johnson, 97 F.3d 751, 755 (5ᵗʰ Cir. 1996), (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997); see also Rudd v. Johnson, No. 00-11173, 2001 WL 726411, *1 (5ᵗʰ Cir. June 28, 2001); Dowthitt v. Johnson, 230 F.3d 733, 740 (5ᵗʰ Cir. 2000)(citing Slack v. McDaniel, 120 S.Ct. 1595, 1603-04 (2000)). "Our determination requires deference to the state habeas court's adjudication of [Styron's] claims on the merits, unless that adjudication: (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' § 2254(d)(1), or (2) constituted an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' § 2254(d)(2)." Wheat v. Johnson, 238 F.3d 357, 360 (5ᵗʰ Cir. 2001). "We resolve doubts about whether to grant a COA in [Styron's] favor, and we may consider the severity of his penalty in determining whether he has met his 'substantial showing' burden." Hill v. Johnson, 210 F.3d 481, 484 (5ᵗʰ Cir. 2000) (citing Fuller v. Johnson, 114 F.3d 491, 495 (5ᵗʰ Cir. 1997)).

In this case, the district court declined to certify seventeen of twenty-one issues advanced by the petitioner. Styron seeks in this court certification on twelve of those seventeen issues. The twelve issues are as follows:

Issue 1: Styron's conviction for capital murder pursuant to

7

former Texas Penal Code § 19.03(a)(7) violated the prohibition against ex post facto laws of Article I, § 10, Clause 1 of the United States Constitution.

Issue 2: Conviction for capital murder pursuant to former Texas Penal Code § 19.03(a)(7) denied Styron due process of law guaranteed by the Fourteenth Amendment of the Constitution.

Issue 3: Failure of the trial court to instruct the jury that a guilty verdict for capital murder could be returned only if the evidence established beyond a reasonable doubt that all the elements of the offense were committed on or after September 1, 1993, violated the prohibition against ex post facto laws of Article I, § 10, Clause 1 of the Constitution.

Issue 4: Failure of the trial court to instruct the jury that a guilty verdict for capital murder could be returned only if the evidence established beyond a reasonable doubt that all the elements of the offense were committed on or after September 1, 1993, denied Styron due process of law guaranteed by the Fourteenth Amendment.

Issue 5: Failure of the trial court to instruct the jury that a guilty verdict for capital murder could be returned only if the evidence established beyond a reasonable doubt that all the elements of the offense were committed on or after September 1, 1993, denied Styron the right to trial by jury guaranteed by the Sixth and Fourteenth Amendments.

Issue 6: Transfer of cause No. 20,278 from the 75th District

8

Court of Liberty County to the 253rd District Court of Liberty County at the request of the State, but without notice to Styron or his attorney, denied Styron due process of law guaranteed by the Fourteenth Amendment.

Issue 7: His absence, in violation of Texas Code of Criminal Procedure article 28.01, from the pretrial proceeding at which the 75th District Court granted the request of the State to transfer his cause to the 253rd District Court denied Styron due process of law guaranteed by the Fourteenth Amendment.

Issue 8: Transfer of the cause from the 75th District Court to the 253rd District Court at the request of the State, but without notice to Styron or his attorney, denied Styron the right to counsel guaranteed by the Sixth and Fourteenth Amendments.

Issue 9: Attack by the State upon the integrity of attorney Walter P. Fontenot denied Styron due process of law guaranteed by the Fourteenth Amendment.

Issue 10: Attack by the State upon the integrity of attorney Walter P. Fontenot denied Styron the right to counsel guaranteed by the Sixth and Fourteenth Amendments.

Issue 11: In violation of the Sixth and Fourteenth Amendments, Styron was denied effective assistance of counsel at trial.

Issue 12: In violation of the Sixth and Fourteenth Amendments, Styron was denied effective assistance of counsel on appeal.

9

Of these twelve issues presently under consideration for COA, none makes a substantial showing of the denial of a constitutional right.

## B. Analysis

For ease of discussion and analysis, similar issues will be grouped together.

### 1. Issues 1 through 5

Styron complains that since the statute under which he was convicted of capital murder became effective on September 1, 1993, the failure of the trial court to instruct the jury that all elements of the offense had to be committed on or after that date operated to subject Styron to an ex post facto law and to deny him due process of law. However, the defense neither objected to the jury charge nor requested an alternative charge along the lines Styron now asserts as crucial.

Styron's assertion that "there was considerable evidence at Styron's trial that elements of the offense were committed before September 1, 1993" is not supported by the record. There was evidence that the victim had suffered physical abuse for several months prior to his death on October 26, 1993, but the medical evidence revealed that the victim suffered three nearly simultaneous but distinct traumas to the head approximately three days prior to his death, any of which could have caused the fatality. Styron admitted to punching the child once on October

10

23, 1993, and there was no evidence that any acts of abuse prior to this date contributed to the victim's death.

Moreover, the indictment properly alleged that the murder took place "on or about" October 23, 1993, and the jury charge tracked the language of the indictment:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of October, 1993, in Liberty County, Texas, the defendant, RONFORD LEE STYRON, JR., did then and there intentionally or knowingly cause the death of an individual, namely, Lee Hollace Styron, an individual under six years of age, by striking or hitting the head of Lee Hollace Styron with Ronford Lee Styron, Jr.'s fist or by causing the head of Lee Hollace Styron to strike or hit an object or by manner and means unknown to the Grand Jury, then you will find the defendant guilty of capital murder as charged in Count I of the indictment.

There was no evidence from which the jury could have found that actions by Styron prior to September 1, 1993, were the cause of death. The complained-of jury instruction properly charged the jury as to the temporal element of the offense. Styron's complaint on these issues is without merit.

Finally, in order for Styron's conviction to violate the ex post facto prohibition, the statute under which he was convicted would have to punish as a crime an act previously legal when committed, make more burdensome the punishment for a crime after its commission, or remove a defense available according to the law when the act was committed. See Dobbert v. Florida, 432 U.S. 282, 292 (1977) (citing Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)). The statute under which Styron was tried and convicted did none of

11

these things as the jury reasonably found that the offense was committed after its effective date of September 1, 1993.

In sum, these issues raised by Styron do not make a substantial showing of the denial of a constitutional right as required under the AEDPA. A COA will not issue.

## 2. Issues 6 through 8

Styron complains that the transfer of the cause from the 75th District Court of Liberty County, the district court from which the grand jury handed down the indictment, to the 253rd District Court of Liberty County, at the request of the State, without notice to or in the presence of either Styron or his attorney and without a hearing, violated Styron's rights to due process of law and to counsel.

Petitioner's motion to quash the indictment on these grounds was denied by the 253rd District Court after a hearing on May 2, 1994. At that hearing testimony showed that between 1977 and 1991 indictments were assigned randomly by the district clerk to either the 75th or the 253rd District Court. The testimony further showed that in 1992 the district clerk began to assign indictments to the court in which the prosecutor handling the case was assigned, and that the District Attorney's practice was to randomly assign cases to prosecutors. However, in this case, Prosecutor Anne Streit was assigned to Styron's case, and she was assigned to the 253rd District Court. The evidence suggests that when the District

12

Attorney's office informed the clerk that Streit was prosecuting the case, the clerk's office informed the judge in the 75th District Court, who then transferred the case to the 253rd District Court without a hearing and without notice to either Styron or his attorney.

The Texas Court of Criminal Appeals found that the transfer was effected pursuant to prosecutorial discretion and that Styron failed to produce exceptionally clear proof that the discretion had been abused.

The district court found no due process violation given that Styron failed to demonstrate that he was in any way prejudiced by the lack of hearing and notice of the transfer, and because the trial court hearing on the motion and the appellate and state writ process afforded Styron a full and fair hearing on this matter. The district court also found no violation of the right to counsel since an administrative act transferring the case was not a criminal proceeding in which the rights of Styron might be affected because the act of transfer was not a "critical stage" in the prosecution.

**a. Right to Counsel**

The right to counsel attaches "at or after the initiation of adversary judicial proceedings against the defendant." United States v. Gouveia, 467 U.S. 180, 187 (1984). This right extends to critical pretrial proceedings as "the accused is guaranteed that he

need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." United States v. Wade, 388 U.S. 218, 226 (1967). The court must "analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." Id. at 227. In Gouveia, the Supreme Court characterized the situations where the right extends as instances where "the results of the confrontation 'might well settle the accused's fate and reduce the trial itself to a mere formality.'" 467 U.S. at 189 (internal citations omitted). As such, the Court has found a violation of the right to counsel where counsel was not notified or allowed to confer with his client prior to a pretrial psychiatric interview later used at the sentencing phase. Estelle v. Smith, 451 U.S. 454 (1981); see also Mempa v. Rhay, 389 U.S. 128, 135 (1967) (holding that counsel must be appointed at a proceeding where certain legal rights like appeal may be lost).

The transfer of Styron's case was an administrative matter and not a "critical" proceeding. Counsel's absence did not derogate from a fair trial; indeed, Styron does not even argue that he was denied a fair trial or that the effect of the transfer pervaded the entire proceeding. See Satterwhite v. Texas, 486 U.S. 249, 257 (1988)(distinguishing cases "in which the deprivation of the right to counsel affected--and contaminated--the entire criminal

14

proceeding" and applying harmless error standard). He merely makes an amorphous argument that he required aid in knowing whether to oppose a transfer. Styron has failed to show prejudice or that the presence of counsel would have eliminated any prejudice. There is no indication of misconduct, animus, or discrimination by the prosecution.

This court has refused to find a violation of the right to counsel at a pretrial confrontation during which a defendant was photographed outside the presence of counsel because "the right to counsel at all stages of the proceedings is not absolute." Smith v. Puckett, 907 F.2d 581, 583 (5th Cir. 1990). Likewise, here the right is not absolute. The transfer did not affect any substantial rights, see Mempa, 389 U.S. at 134, because Styron was still afforded a fair trial. See Childress v. Johnson, 103 F.3d 1221, 1225 (5th Cir. 1997). The mere absence of counsel at an administrative process is not sufficient to show a deprivation of a constitutional right. Accordingly, no COA will issue because Styron has failed to make the requisite substantial showing of the denial of a constitutional right.

**b. Due Process**

"The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually

15

confronting witnesses or evidence against him." United States v. Gagnon, 470 U.S. 522, 526 (1985). However, the Supreme Court has limited this right by holding that there is a due process right to be present "'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. (citing Snyder v. Massachusetts, 291 U.S. 97, 105-06, 108 (1934)). Having recognized this limit, the Court in Gagnon held that the presence of four defendants and their attorneys during an in camera discussion between a judge, juror, and another attorney was not required to ensure "fundamental fairness or a 'reasonably substantial . . . opportunity to defend against the charge.'" Id. at 527 (internal citations omitted). In Kentucky v. Stincer, 482 U.S. 730, 745 (1987), the Court determined that a defendant's due process right is the right to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." In Stincer, there was no violation of due process for a defendant to have been excluded from a competency hearing concerning two witnesses because the defendant gave no indication that his presence "would have been useful in ensuring a more reliable determination as to whether the witnesses were competent to testify." 482 U.S. at 747.

Styron has failed to show deprivation of a constitutional

right.  Although he argues that he was not given notice or an opportunity to object to the transfer, he nevertheless fails to demonstrate "that his presence at the [transfer] would have contributed to the fairness of the proceeding.  He thus fails to establish, as an initial matter, the presence of a constitutional deprivation."  Stincer, 482 U.S. at 747 n.21.  As the district court acknowledged, the transfer was a purely administrative matter, and Styron's presence would not have had a reasonably substantial relation to his opportunity to defend against the charge.  See Gagnon, 470 U.S. at 526.

This court has faced a similar issue in United States v. Osum, 943 F.2d 1394 (5th Cir. 1991).  There, the court addressed the propriety of a transfer requested by the government to a judge who had previously presided over the trial of codefendants.  Id. at 1398.  First recognizing that a defendant does not have a constitutional right to trial within a particular division of a judicial district, and, *a fortiori*, before a particular judge, the court emphasized that a court may not transfer a case if a defendant makes a strong showing of prejudice.  Id. at 1399.  The court held the transfer to be valid, even though the government specifically chose the transferee judge.  Id. at 1400.  "Although the transfer of a case to a different judge upon request of the government is not something we would endorse as routine practice, we cannot in this case, given the existence of a valid reason supporting transfer and no showing of prejudice by the defendant,

17

say that the district court abused its discretion." Id. In this case, the transfer was an administrative matter, and unlike Osum, the transferee court's only connection to the matter was the fact that the prosecutor to whom the case was randomly allotted was assigned to that court. Styron makes no showing of prejudice based on the transfer or his lack of presence thereat. See United States v. Allen, 633 F.2d 1282, 1294 (9th Cir. 1980) ("They have no basis, however, to advance as error any alleged violation of the Northern District of California's Random Assignment Plan unless they can show actual prejudice.").

Therefore, applying the proper standard under the AEDPA, we conclude that Styron has failed to make the requisite substantial showing of the denial of a constitutional right under the Sixth and Fourteenth Amendments. Accordingly, no COA will issue on Styron's claims related to the transfer.

**3. Issues 9 and 10**

Styron complains that testimony at the guilt/innocence phase of the trial by Wallace Clark, Styron's brother, that Styron's attorney (Walter P. Fontenot) had told Clark to lie to the grand jury, and that playing a portion of a recording of Clark's grand jury testimony to that effect, denied Styron due process of law and the right to counsel.

Prosecutorial misconduct is not a ground for relief unless it casts serious doubt upon the correctness of the jury's verdict. See United States v. Hernandez-Guevara, 162 F.3d 863, 874 (5th Cir.

18

1998).  This court has previously identified three factors to be considered: 1) the magnitude of the prejudicial effect of the remarks; 2) the efficacy of any cautionary instruction given by the judge; and 3) the strength of the evidence supporting the conviction.  United States v. Casel, 995 F.2d 1299, 1308 (5th Cir. 1993), vacated on other grounds by Reed v. United States, 510 U.S. 1188 (1994).  Only where improper prosecutorial comments substantially affect the defendant's right to a fair trial do they require reversal.  See United States v. Diaz-Carreon, 915 F.2d 951, 956 (5th Cir. 1990).  Under these standards and viewing the testimony as a whole in its proper context, the alleged prosecutorial misconduct did not so infect the trial with unfairness as to deny due process of law.

Styron objects to the content of the statements made by Clark.  However, this testimony was elicited by the prosecutor as prior inconsistent statements for impeachment purposes.  Because the testimony was admissible evidence under Rule 801(e)(2)(D) of the Texas Rules of Evidence, because the injurious statements were made by the witness and not by the prosecutor, and because cross-examination of Clark by the defense mitigated the prejudice by pointing out that Clark had erred in attributing to Fontenot the statements of another attorney not involved in the defense, the alleged misconduct did not infect the trial with unfairness in violation of due process.

As a result, Styron fails to make the showing required under

19

the AEDPA for the issuance of a COA on the claim of a due process violation. Finally, as the alleged misconduct did not in any way prejudice Styron's right to counsel under the Sixth Amendment, that claim has no merit.

## 4. Issues 11 and 12

Styron complains that he was denied effective assistance of counsel at trial because of his counsel's failures to object (1) to certain voir dire statements by the State regarding punishment (the weighing of mitigating evidence against aggravating factors); (2) to Styron's trial pursuant to a capital murder statute not effective at the time all elements of the crime were committed or to jury instructions that did not expressly condition guilt upon the finding beyond a reasonable doubt that all elements were committed after the statute's effective date; and (3) to the State's impeachment of Clark. He further complains that on appeal his appellate counsel failed to pursue these issues or to allege ineffective assistance of counsel at trial, and that such failures constitute ineffective assistance of counsel on appeal.

To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense--that the errors were so serious as to deprive the defendant of a fair trial, that is, a trial the result of which is reliable. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Only a "showing that counsel made errors so serious that counsel was not functioning as the

20

'counsel' guaranteed by the Sixth Amendment" suffices. <u>Id.</u> This court has concluded that only if counsel's acts "fell beneath an objective standard of reasonable professional assistance" has he failed to function as counsel guaranteed by the Sixth Amendment. <u>Gray v. Lynn</u>, 6 F.3d 265, 268 (5th Cir. 1993).

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance or sound trial strategy. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. The petitioner must identify the acts or omissions of counsel that are alleged to be outside the bounds of reasonable professional judgment, and the court must then determine whether, in light of all of the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. <u>Id.</u> at 690.

Because a criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal as of right, <u>see</u> <u>Lombard v. Lynaugh</u>, 868 F.2d 1475, 1479 (5th Cir. 1989), the <u>Strickland</u> standard applies to claims of ineffective assistance of counsel by both trial and appellate counsel. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>United States v. Merida</u>, 985 F.2d 198, 202 (5th Cir. 1993).

We adopt the district court findings that in light of all of the circumstances and considering the affidavit of Styron's trial

counsel, Gary W. Bunyard,[1] the identified acts and omissions were within the wide range of reasonable professional assistance or sound trial strategy. Styron has failed to show that counsel's trial performance was deficient, that it prejudiced his defense, or that he was deprived of a fair trial therefrom.

Each of the grounds underlying the alleged errors by counsel on appeal have been discussed previously and found to lack merit. Therefore, appellate counsel's failure to pursue relief on those bases does not constitute ineffective assistance of counsel since no prejudice resulted therefrom and because the reliability of the result of the appeal was not undermined thereby.

Accordingly, as each of the grounds raised to establish ineffective assistance of counsel at trial and on appeal have been resolved against Styron by this court, Petitioner has failed to make a substantial showing of the deprivation of a constitutional right. No COA will issue with respect to these issues.

### III. Review of Certified Issues

---

[1] Mr. Bunyard's affidavit affirmed the following: he and Mr. Fontenot were of the view that the voir dire statement by the prosecution that the second issue called for a weighing of the mitigating circumstances against the aggravating circumstances was a proper statement of the law under Texas Code of Criminal Procedure article 37.071 § 2(e) and that the jury charge given accurately tracked this provision; no ex post facto challenge was made because the evidence of life threatening injuries occurred in late October 1993, after the criminal statute's effective date; and, the trial strategy adopted by Fontenot and Bunyard to counter the impeachment testimony of Clark was to call Fontenot as a witness during the defense case in chief since Clark's testimony had been impeached to the point of being unreliable.

22

**A. Cruel and Unusual Punishment Challenges**

A COA was granted on the issue of whether Styron's conviction violated the cruel and unusual punishment clauses of the Eighth and Fourteenth Amendments.  In <u>Arave v. Cheech</u>, 507 U.S. 463, 470 (1993), the Supreme Court held that "to satisfy the Eighth and Fourteenth Amendments, a capital sentencing scheme must 'suitably direc[t] and limi[t]' the sentencer's discretion 'so as to minimize the risk of wholly arbitrary and capricious action.'" (citing <u>Lewis v. Jeffers</u>, 497 U.S. 764 (1990)).  The Court has set out a two-part test to determine the constitutionality of a death penalty scheme, examining both the eligibility decision and selection decision. <u>Tuilaepa v. California</u>, 512 U.S. 967 (1994).  As Styron attacks only the eligibility requirement, only that portion of the test is relevant.  "To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase."  <u>Tuilaepa</u>, 512 U.S. at 972 (internal citations omitted). "As we have explained, the aggravating circumstance must meet two requirements.  First the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder.  Second, the aggravating circumstance may not be unconstitutionally vague."  <u>Id.</u> (internal citations omitted).

Styron argues that former Texas Penal Code § 19.03(a)(7), now

23

Texas Penal Code § 19.03(a)(8),[2] violates the prohibition against cruel and unusual punishment because the age of a victim does not establish a principled basis for distinguishing defendants under the constraints of <u>Arave</u>. He asserts that there is no principled basis for distinguishing between a defendant who murdered a child under the age of six from one who murdered an older child. We disagree. Under the test presented in <u>Tuilaepa</u>, the aggravating circumstance for capital murder of murdering a child under the age of six is constitutionally sufficient. First, it does not apply to every defendant convicted of murder; it applies only to a certain subclass of defendants. <u>See</u> <u>Tuilaepa</u>, 512 U.S. at 972. Second, it is not unconstitutionally vague. <u>See</u> <u>Henderson v. State</u>, 962 S.W.2d 544, 563 (Tex. Crim. App. 1997) ("The child-murder provision meets both tests: murderers of children under six is a subclass of murderers in general, and 'children under six' is a clear and definite category."). On the contrary, the statute is very clear unlike other statutes which the Supreme Court has found to be vague. <u>See</u>, <u>e.g.</u>, <u>Maynard v. Cartwright</u>, 486 U.S. 356 (1988) (holding "especially heinous, atrocious, or cruel" to be vague). The "vagueness review is quite deferential." <u>Tuilaepa</u>, 512 U.S. at 973.

Styron misses the mark when he argues that under the Eighth

---

[2]Texas Penal Code § 19.03(a)(8) provides: "A person commits an offense [of capital murder] if he commits murder as defined under Section 19.02(b)(1) and: the person murders an individual under six years of age."

24

Amendment, conviction and imposition of the death penalty for the murder of a child under six years old is arbitrary. "A *vague propositional factor* used in the sentencing decision creates an unacceptable risk of randomness, the mark of the arbitrary and capricious sentencing process prohibited by Furman v. Georgia." Id. at 974-75 (emphasis added). Texas Penal Code § 19.03(a)(7), now Texas Penal Code § 19.03(a)(8), has no such vague propositional factor and is not arbitrary. See Godfrey v. Georgia, 446 U.S. 420, 428 (1980) ("A capital sentencing scheme must, in short, provide a 'meaningful basis for distinguishing the few cases in which [the penalty] is imposed from the many cases in which it is not. This means if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion.'") (internal citations omitted).

On a more general level, the Supreme Court upheld the Texas death penalty scheme insofar as it narrowed the definition of capital murder to circumstances in which there was "at least one statutory aggravating circumstance in a first-degree murder case before a death sentence may even be considered." Jurek v. Texas, 428 U.S. 262, 276 (1976). Murdering a child under six is a sufficiently narrow statutory aggravating factor. Therefore, we do

25

not find a violation of the prohibition against cruel and unusual punishment.

**B. Equal Protection Challenge**

Styron contends that conviction for capital murder under former Texas Penal Code § 19.03 (a)(8) denied him equal protection under the Fourteenth Amendment when it limited capital murder to circumstances where the victim is under six years old. First, he contends that the statute should be reviewed under strict scrutiny because it impinges on a nebulous right of "freedom from the arbitrary and capricious infliction of punishment." However, besides our resolution of the arbitrary and capricious issue, the Supreme Court has never afforded this "right" the protection of strict scrutiny. The Fifth Circuit, led by the Supreme Court's decision in Gregg v. Georgia, 428 U.S. 153 (1976), was convinced that "equal protection clauses do not require a higher level of scrutiny for legislative classifications that may result in the death penalty. Thus, [petitioner's] claims are to be assessed under a rational basis test." Gray v. Lucas, 677 F.2d 1086, 1104 (5th Cir. 1982). Despite Styron's argument that age-based capital murder statutes should be reviewed under a strict scrutiny analysis, "[a]ge classifications, unlike governmental conduct based on race or gender, cannot be characterized as 'so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy.'" Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83

26

(2000) (quoting <u>Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 440 (1985)). "[A]ge is not a suspect classification under the Equal Protection Clause. States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." <u>Id.</u> (internal citations omitted).

Styron next contends that the Texas statute cannot withstand even rational basis scrutiny because Texas has no legitimate interest in granting greater protection to children under six than to other children and adults. Rational basis scrutiny was clearly set out in <u>Kimel</u>, 528 U.S. at 84. "States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest . . . . [W]e will not overturn such [government action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." <u>Id.</u> (internal citations omitted).

The Texas Penal Statute is constitutional under rational basis scrutiny. First, there is a clear governmental interest in protecting young children. As the Texas Court of Criminal Appeals has eloquently stated, "Children are deemed to warrant protection because of their inexperience, lack of social and intellectual development, moral innocence, and vulnerability." <u>Henderson</u>, 962 S.W.2d at 562. Secondly, the decision of the Texas legislature to

27

declare the age limit of six years is rationally related to the interest of protecting children. It is inherently difficult to draw a line of demarcation, id.; however, the Texas legislature cannot be said to have acted irrationally. As was testified concerning this statute, children under six are usually still at home and are vulnerable to caregivers, as exactly was the case here. See SB 13, Public Hearing, Senate Criminal Jurisprudence Committee, March 3, 1993. Using the six-year age limit is a rationally related means to accomplish Texas's end: protecting young children.

Alternatively, we agree with the district court that this claim is barred by Teague v. Lane, 489 U.S. 288 (1989), as it seeks application of a new constitutional rule of criminal procedure.

## C. Due process and fair and impartial jury challenges

A COA was granted on the issues of whether an alleged misstatement by the prosecution during voir dire denied Styron a fair and impartial trial as guaranteed by the Sixth and Fourteenth Amendments and due process as guaranteed by the Fourteenth Amendment. Eight of twelve jurors were told during voir dire that the second question submitted in the punishment phase of the trial should only be answered affirmatively if the mitigating evidence outweighed the aggravating evidence. Texas Criminal Procedure Article 37.071 actually instructs the court to answer the following issue:

28

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a *sufficient* mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Styron contends that a mitigating circumstance might be sufficient to warrant life imprisonment without outweighing the aggravating circumstances.

However, Styron, as he readily admits, failed to object to the voir dire questioning. "The 'Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims.'" Jackson v. Johnson, 194 F.3d 641, 652 (5th Cir. 1999) (internal citations omitted). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). If Styron overcomes the procedural bar, he still must demonstrate that "the prosecutors' comments 'so infected the trial with unfairness

29

as to make the resulting conviction [or sentence] a denial of due process."  Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988) (internal citations omitted).  "This Circuit has developed the following test of constitutional error when a generic due process violation is asserted: 'The test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'"  Id. at 609 (quoting Kirkpatrick v. Blackburn, 777 F.2d 272, 278-79 (5th Cir. 1985)).

Although he never clearly addresses cause or prejudice, Styron does assert that his attorney failed to object to the voir dire questioning because he misunderstood the question and thought that the state was presenting accurate law.  This reason, however, is not sufficient cause.  The Fifth Circuit found that if an attorney "had 'no reasonable basis upon which to formulate a constitutional question,' the default is excusable." Landry v. Lynaugh, 844 F.2d 1117, 1120 (5th Cir. 1988).  An attorney's personal alleged misconceptions about the law do not rise to the level of a "change in federal law."  Id.  Furthermore, Styron fails to demonstrate prejudice.  The state never referred back to voir dire in its closing arguments, and the court submitted the special issue as dictated by Texas Criminal Procedure Article 37.071.  In interpreting the mitigation issue, a Texas court has described it as "the weighing of mitigating evidence[,] . . . a subjective determination undertaken by each juror."  Morris v. State, 940

30

S.W.2d 610, 614 (Tex. Crim. App. 1996).

Styron also fails to show a risk of fundamental miscarriage of justice. Although he argues that the evidence presented during the punishment phase concerning his dysfunctional childhood and history of abuse was considerable, nevertheless the jury still received the proper instruction immediately before punishment deliberations.[3] See Thompson v. Lynaugh, 821 F.2d 1054, 1061 (5th Cir. 1987) (holding, despite prosecutor's misstatement of the law during voir dire, there was no constitutional error because the court properly instructed the jury in accordance with law). Because Styron has failed to overcome the procedural bar, we decline to address the merits of his claim of violation of his right to a fair and impartial jury and right to due process.

## IV. Conclusion

For the foregoing reasons, we deny Styron's request for a COA on all issues, and we affirm the district court's denial of habeas relief on the issues of the prohibition against cruel and unusual punishment, equal protection, fair and impartial jury, and due process.

Application DENIED; judgment AFFIRMED.

---

[3]Styron even admits that the jurors took a poster board printed with Texas Criminal Procedure Article 37.071 § (2)(e) on it with them into the jury room during their deliberations.

31