United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 7, 2004**

Charles R. Fulbruge III
Clerk

REVISED June 9, 2004

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 03-51060**
_____

**DENNIS WAYNE BAGWELL,**

**Petitioner - Appellant,**

**versus**

**DOUGLAS DRETKE, Director,
Texas Department of Criminal Justice - Correctional
Institutions Division,**

**Respondent - Appellee.**

---

**Appeal from the United States District Court
for the Western District of Texas**

---

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In 1996, a Texas jury convicted and sentenced to death Dennis Wayne Bagwell for the exceedingly brutal murders of his mother, half-sister, four-year-old niece, and another young woman. After direct appeal and petition for state habeas corpus were unsuccessful, Bagwell raised seventeen grounds for relief in a § 2254 petition before the federal district court. The district court rejected all of the claims, dismissed Bagwell's petition, and declined to grant a certificate of appealability ("COA") on any issue raised.

Bagwell seeks a COA from this court on two issues: (1) whether he was denied due process and the presumption of innocence as a result of being shackled in the courtroom throughout the trial, and (2) whether trial counsel coerced him into waiving his right to testify in violation of his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial. For the reasons set forth below, we deny a COA on both claims.

## I. BACKGROUND

On November 21, 1995, Bagwell was indicted for the capital murders of Leona McBee, Libby Best, Reba Best, and Tassy Boone.[1] Before trial, the prosecution moved to have Bagwell restrained while in the courtroom. At this hearing, Wilson County Deputy Sheriff Johnny Deagan testified that: (1) Bagwell had made numerous threats against law enforcement personnel during his pretrial detention; (2) unidentified members of the victims' families had threatened Bagwell; and (3) restraining Bagwell through the use of a leg brace would aid court security personnel in the event Bagwell needed to be removed from the courtroom and would reduce Bagwell's ability to retaliate against anyone who attacked him. Calvin Pundt, an investigator for the Wilson County Sheriff's Department, testified Bagwell threatened several law

_____

[1] Ron Boone, Leona McBee's common-law husband, discovered the victims' bodies. Bagwell was related to three of the four victims. Leona McBee was Bagwell's mother, Libby Best was his half-sister, and Reba Best was Leona's four-year-old granddaughter. Tassy Boone was the teenage granddaughter of Ron Boone. Under Texas law, murdering more than one person during the same criminal transaction is a capital offense. See TEX. PEN. CODE § 19.03(a)(7)(Vernon 2003).

enforcement personnel, vowing to "take one of you out before we hit the floor." While Bagwell had not physically assaulted anyone during his pretrial detention, the defense did not rebut the testimony concerning Bagwell's threats against law enforcement.

The state trial court granted the motion and directed that (a) the leg restraints must be worn beneath Bagwell's clothing, (b) Bagwell must not be shown to the jury or any prospective juror in any restraint, and (c) Bagwell's legs must be concealed while he was seated in the courtroom. Bagwell did not object to the leg restraints throughout the pendency of the trial or on direct appeal.

At trial, the state offered several witnesses, including Victoria Wolford, Bagwell's girlfriend, who testified that she was with Bagwell when he committed the gruesome murders, and she had led police to various locations along the getaway route where Bagwell had discarded incriminating evidence. Law enforcement officers and scientific experts linked significant physical evidence from the murders to Bagwell.[2] The defense countered with witnesses of their own.[3] However, Bagwell did not testify.

---

[2] Specifically, law enforcement officers testified that they recovered, based on information Wolford provided, numerous items taken from the Boone residence, including a pair of tennis shoes and a pair of shorts. An expert witness testified that one of the tennis shoes matched a bloody shoe print found at the crime scene under the body of Tassy Boone. Other witnesses testified that the tennis shoes in question belonged to Bagwell. Furthermore, a firearms expert testified that the bullet fragments removed from Libby Best's cranium matched the shattered rifle the law enforcement officers recovered.

[3] The defense's psychiatric expert testified that cocaine ingestion can raise a person's energy level, increase aggressiveness, lead to manic episodes

3

According to Bagwell, trial counsel concluded that his testimony would unduly risk the introduction of Bagwell's extensive criminal history.

After deliberating for three hours, the jury returned a guilty verdict. The case then proceeded to the punishment phase. The state presented, inter alia, evidence and testimony concerning Bagwell's past convictions, his violence during pretrial detention, his bad disciplinary record during previous incarcerations, and his parole records. The defense offered five witnesses, including Bagwell's ex-wife and former parole officer, who each testified that Bagwell should receive a sentence of life imprisonment rather than the death penalty. Bagwell did not testify during the penalty phase. After a four-hour deliberation, the jury sentenced Bagwell to death.

Bagwell appealed both his conviction and sentence of death to the Texas Court of Criminal Appeals. Bagwell v. State, No. 72,699 (Tex. Crim. App. March 31, 1999). The Court of Criminal Appeals affirmed Bagwell's conviction in all respects. Bagwell

---

involving hyperactivity and unclear thought, and cause psychotic, paranoid behavior. Other witnesses testified to Bagwell's depressed and upset demeanor in the days following the murders. Further, in their effort to suggest that Monica Boone, Tassy Boone's mother, committed the crime, the defense offered evidence to show that Monica and Tassy had a difficult relationship, that Monica physically abused Tassy, and, on the night of the murders, a woman who bore a resemblance to Monica appeared at a bar near the crime scene intoxicated and mumbling about having lost her hammer. On rebuttal, the state called Monica Boone to establish that she had been in California at the time of the murders. The state also presented testimony to establish that law enforcement officers had identified the woman at the bar, determined that she was not Monica Boone, and ruled the woman out as a suspect.

then filed a state habeas application in the trial court.  Based on the trial court's findings of facts and conclusions of law, and its own review, the Court of Criminal Appeals denied habeas relief.  Ex Parte Bagwell, No. 42,341-01 (Tex. Crim. App. September 29, 1999) (unpublished).  Bagwell then filed a petition for writ of habeas corpus in the federal district court.  The district court rejected Bagwell's seventeen assignments of error and declined to grant Bagwell's request for a COA.  Bagwell v. Cockrell, No. SA-99-1133-OG, 2003 WL 22723006 (W.D. Tex. August 19, 2003).  Thereafter, Bagwell appealed the denial of the COA on two of his habeas claims to this court.

## II. STANDARD OF REVIEW

Bagwell's § 2254 habeas petition is subject to the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 1918 (2001).  AEDPA requires Bagwell obtain a COA before he can appeal the district court's denial of habeas relief.  28 U.S.C. § 2253(c)(1) (2000).  Hence, "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."  Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003).

A COA will issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (2000); Miller-El, 537 U.S. at 336, 123 S. Ct.

5

at 1039.  More specifically, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).  Likewise, when the district court has rejected a claim on a procedural ground, "the petitioner must also demonstrate that 'jurists of reason would find it debatable whether the district court was correct in the procedural ruling.'"  Henry v. Cockrell, 327 F.3d 429, 431 (5th Cir. 2003) (quoting Slack, 529 U.S. at 484, 120 S. Ct. at 1604).  The Supreme Court counseled that "a COA ruling is not the occasion for a ruling on the merit of petitioner's claim[.]"  Id. at 331.  Instead, this court should engage in an "overview of the claims in the habeas petition and a general assessment of their merits."  Id. at 336.  "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."  Id. at 338.

Ultimately, "[t]o prevail on a petition for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Robertson v. Cockrell, 325 F.3d 243, 247-48 (5th Cir.

6

2003) (en banc) (quoting 28 U.S.C. § 2254(d)(1)(2000)).[4]  However, "[w]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect."  Catalan v. Cockrell, 315 F.3d 491, 493 (5th Cir. 2002) (citation and quotation omitted).

## II. DISCUSSION

On appeal, Bagwell asserts that he was denied due process and the presumption of innocence as a result of being shackled in the courtroom throughout the trial and that his trial counsel coerced him into waiving his right to testify in violation of his Fifth, Sixth and Fourteenth Amendment rights to a fair trial.

### A.  Use Of Shackles During Trial

Bagwell argues that the state trial court's decision to shackle him was not the "least restrict alternative" and therefore constitutionally infirm.  This claim is without merit.  "We begin with the threshold premise than an accused is presumed innocent and, as such, is entitled to all of the trappings of innocence during trial."  United States v. Nicholson, 846 F.2d 277, 279 (5th Cir. 1988) (citations omitted).  Thus, the shackling of a defendant during trial, a practice that potentially threatens the defendant's

---

[4]     A state court's decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000).

7

presumption of innocence, bears close scrutiny. <u>Holbrook v. Flynn</u>, 475 U.S. 560, 106 S. Ct. 1340, 1345 (1986) (citing <u>Estelle v. Williams</u>, 425 U.S. 501, 503-04, 96 S. Ct. 1691, 1692-93 (1976)); <u>Marquez v. Collins</u>, 11 F.3d 1241, 1244 (5th Cir. 1994) ("Restraint at trial may carry a message that a defendant continues to be dangerous.").

These important due process concerns "must be balanced against the court's obligation to protect the court and its processes, and to attend to the safety and security of those in the courtroom." <u>Nicholson</u>, 846 F.2d at 279 (citations omitted); <u>Marquez</u>, 11 F.3d at 1244. "While a defendant is entitled to the physical indicia of innocence, a court is justified in ordering him handcuffed and shackled during trial [when] there is a danger of escape or injury to the jury, counsel, or other trial participants." <u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir. 1994). Most importantly, this inquiry "does not trigger a type of 'least means' analysis. That in retrospect some lesser restraint might have sufficed is not determinative." <u>Marquez</u>, 11 F.3d at 1244.

Bagwell has failed to make a substantial showing that the use of leg restraints violated his constitutional due process rights. The state trial court determined that several factors, including Bagwell's overt threats against law enforcement officers during his pre-trial detention, warranted shackling. Bagwell did not rebut the evidence of his threats. Moreover, the trial judge had Bagwell wear the restraints underneath his clothing and took

8

significant measures to ensure that the restraints would not be visible to the jury. No reasonable jurist could conclude that the state court's rejection of Bagwell's claim constituted an unreasonable application of federal law.[5]

What's more, Bagwell's entire rejoinder consists of a hearsay affidavit from his investigator. In the affidavit, the investigator asserts that a juror correctly deduced that Bagwell was restrained, which led the juror to believe Bagwell was dangerous. The state court rejected the proffer because Bagwell failed to offer an affidavit directly from the juror. However, even if Bagwell had secured direct testimony, such evidence does not rise to a constitutional dimension; under proper circumstances the trial court could have placed Bagwell in visible restraints and remained within constitutional bounds. See Allen, 397 U.S. at 343-44, 90 S. Ct. at 1061 (permitting "obstreperous" defendants to be "bound and gagged" in the jury's presence under certain circumstances). One juror's supposition concerning the use of leg restraints did not violate Bagwell's constitutional right to the presumption of innocence. See Chavez, 310 F.3d at 809-10 (inadvertent activation of stun-belt was not a constitutional

---

[5] See, e.g., Bigby v. Cockrell, 340 F.3d 259, 277-78 (5th Cir. 2003)(citations and quotations omitted) Use of shackles permissible when defendant posed a danger to those in courtroom); Chavez v. Cockrell, 310 F.3d 805, 809 (5th Cir. 2002) (use of stun-belt was not abuse of discretion where defendant was a flight risk); Marquez, 11 F.3d at 1244 (court has discretion in determining whether restraints are needed to ensure safety of trial participants or sanctity of trial). Also, the trial court's mitigation of any potential prejudicial effect on the jury amplifies the reasonableness of the decision. See Chavez, 310 F.3d at 809.

violation).  Reasonable jurists could not debate whether the state courts erred in concluding that the use of leg restraints, under these facts, violated Bagwell's constitutional rights.

**B.    Right to Testify**

Bagwell next argues that his trial counsel unconstitutionally coerced him into not testifying at trial.  The district court determined that Bagwell procedurally defaulted and failed to exhaust available state remedies.  On appeal, Bagwell argues that he fairly presented his claim to the state courts.  We disagree.

"[P]rocedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (citations and quotations omitted); Elizalde v. Dretke, 363 F.3d 323, 328-39 (5th Cir. 2004); 28 U.S.C. § 2254(b)(1).  However, a court may resurrect a defaulted claim, and consider its merits, if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991); see also Styron v. Johnson, 262 F.3d 438, 454 (5th Cir. 2001).

10

First, Bagwell's failure to exhaust state remedies is beyond debate. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (citations and quotations omitted); see also Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982); see also Moore v. Cain, 298 F.3d 361, 364 (5th Cir. 2002). Rather, the petitioner must afford the state court a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." Anderson, 459 U.S. at 6, 103 S. Ct. at 277. "Indeed, where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." Wilder, 274 F.3d at 259 (quoting Vela v. Estelle, 708 F.2d 954, 958 n.5 (5th Cir. 2001)); Henry, 327 F.3d at 432.

Bagwell's state habeas application did not allege that he was denied the right to testify at his capital murder trial or even an ineffective assistance of counsel claim raising a similar concern. At no time during the pendency of the state habeas proceeding did Bagwell seek permission to amend his petition to include such a claim. In fact, Bagwell's state habeas proposed factual findings and conclusions of law, which included several

ineffective assistance of counsel claims, did not set forth a claim that he was denied the right to testify. Bagwell concedes as much.[6] Nevertheless, Bagwell contends that his testimony, during the state habeas evidentiary hearing, concerning his desire to testify sufficiently presented the issue for review. Bagwell's factual testimony regarding his dissatisfaction with trial counsel does not satisfy our exhaustion requirement. See Gray v. Netherland, 518 U.S. 152, 162, 116 S. Ct. 2074, 2081 (1996) (concluding that petitioner does not satisfy the § 2254(b) exhaustion requirement "by presenting the state courts only with the facts necessary to state a claim for relief"). Since Bagwell "advance[d] in federal court an argument based on a legal theory distinct from that relied upon in state court . . . [he] therefore failed to satisfy the exhaustion requirement." Nobles, 127 F.3d at 422 (citations and quotations omitted).

Second, Texas courts would find Bagwell's claim procedurally barred. Texas does not generally permit successive habeas applications. See TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5 (Vernon Supp. 2003). Article 11.071 does, however, provide three

---

[6] Although Bagwell concedes on appeal that no such claim was presented in his writ application before the Texas courts, he argues that the omission of the right to testify claim was the result of strategic conflict with his state habeas counsel. As discussed infra, Bagwell does not have a constitutional right to habeas counsel and he therefore bears the burden of his counsel's decisions. See Coleman, 501 U.S. at 752, 111 S. Ct. at 2566. Bagwell also contends that his testimony equates to a pro se or at least "quasi-pro se" appearance before the state habeas courts. Bagwell's assertion is without merit and not relevant to the issues before this court. See Smith v. Collins, 977 F.2d 951, 962 (5th Cir. 1992) (petitioner has no right to "hybrid representation") (citations and quotations omitted).

12

exceptions: (1) the claim could not have been presented in the initial application because the factual or legal basis of the claim was unavailable at that time; (2) the petitioner would not have been convicted absent the constitutional violation; or (3) the jury would not have answered in the state's favor on a special issue absent the constitutional violation. <u>Id</u>. at § 5(a)(1)-(3). Bagwell does not qualify for any of these limited exceptions. Bagwell was able to (and argues to this court that he in fact did) present the factual basis for his right to testify claim in a timely initial application. Likewise, the legal right to testify in one's own defense certainly pre-dates Bagwell's initial habeas petition. <u>See</u> <u>Rock v. Arkansas</u>, 483 U.S. 44, 49, 107 S. Ct. 2704, 2708 (1987). Furthermore, as discussed infra, Bagwell does not even argue that his testimony would have produced an aquittal or non-capital sentence.[7]

Last, Bagwell does not qualify for § 2254(b)'s narrow exceptions: "cause and actual prejudice" or "miscarriage of justice." <u>See</u> 28 U.S.C. § 2254(b)(1)(B). To prove "cause" Bagwell must establish that some "external force" impeded the defense's

---

[7] Bagwell, in his effort to establish that Texas does not regularly adhere to article 11.071's successive habeas prohibition, argues that Texas appellate courts have discretion to consider unassigned error or order remand for additional fact-finding. <u>See</u> <u>Ex Parte Jordon</u>, 879 S.W.2d 61, 62 (Tex. Crim. App. 1994); <u>Ex Parte Davis</u>, 818 S.W.2d 64, 65 (Tex. Crim. App. 1991). Those cases are inapposite for two reasons. First, the Court of Criminal Appeals remanded those cases in lieu of ruling on the merits. Here, the court ruled on the merits, thus triggering article 11.071's successive petition bar. Second, those cases were remanded for further <u>factual</u> development of explicitly raised legal claims. Here, as Bagwell concedes, he failed to raise a legal claim concerning his right to testify. This failure is determinative.

13

efforts to comply with the procedural rule.  <u>Coleman</u>, 501 U.S. at 753, 111 S. Ct. at 2566.  The only argument that we can charitably glean from Bagwell's appeal, in this regard, refers to errors made by his state habeas counsel.  "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error."  <u>Id</u>. at 753.  Bagwell has not offered any argument that a genuine external force caused the procedural violation.  <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986) ("external forces" include, inter alia, objective factors external to the defense that impeded counsel's compliance or "some interference by officials [that] made compliance impractical").

Bagwell also cannot establish that procedural default would occasion a miscarriage of justice.  To meet the "miscarriage of justice" test, Bagwell needed to supplement his constitutional claim with a colorable showing of factual innocence, <u>i.e.</u>, "a fair probability that, in light of all the evidence, including that . . . evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."  <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 & n.5, 112 S. Ct. 2514, 2518-19 (1992) (citations and quotations omitted); <u>see</u> <u>also</u> <u>Callins v. Johnson</u>, 89 F.3d 210, 213-214 (5th Cir. 1996) ("This miscarriage of justice exception is concerned with actual as compared with legal

14

innocence[.]") (citations and quotations omitted).  Bagwell has not raised a "factual innocence" argument.

In sum, Bagwell failed to present this claim to the state courts, would be barred under Texas law from raising it in a successive habeas petition, and does not qualify for the equitable exceptions carved out in § 2254(b).  Because the district court's procedural default ruling is not debatable, we do not reach the question whether the merits of Bagwell's underlying right-to-testify claim are debatable.

### IV. CONCLUSION

Because we **DENY** Bagwell's application for COA on both issues raised, we lack jurisdiction to review the district court's denial of habeas relief.

**COA DENIED.**

15