**Ex parte William Prince DAVIS.**

**No. 71717.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 1, 1993.

Will Gray, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Andrea Lopes Moore, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

PER CURIAM.

This is a post-conviction application for writ of habeas corpus brought pursuant to Article 11.07, V.A.C.C.P. This Court affirmed applicant's conviction for capital murder on direct appeal. *Davis v. State,* 597 S.W.2d 358 (Tex.Cr.App.1980). Applicant contends that counsel at his 1978 trial was deficient in a number of respects which, separately and in the aggregate, violated his Sixth Amendment right to effective assistance of counsel. He also contends that certain assurances the prosecutor obtained from prospective jurors, as well as argument made at the punishment phase of trial, combined to deprive him of his Eighth Amendment right to a jury capable of considering all relevant evidence that might provide a basis for im-

posing a sentence less than death. We will deny relief.[1]

## I.

On the evening of June 2, 1978, applicant appeared at the door of the office of the Red Wing Ice Cream Company, just as several of the company drivers were turning in their day's receipts. The proprietor, Richard Lang, aware that something was amiss, began to approach applicant. Applicant shot Lang once in the lower chest with a .32 calibre pistol, and then ordered the drivers up against the wall. He escaped with more than $700 and a shotgun. Lang died. At the time of this offense applicant was twenty-one years old.

■ The guilt/innocence phase of applicant's trial was essentially a formality. Counsel for applicant only minimally cross-examined the State's witnesses. His final summation takes up less than a full page of the statement of facts. In it counsel basically acknowledged that he had simply put the State to its proof. During his argument at the punishment phase, he further acknowledged that the only viable issue in the case was not applicant's guilt, but whether the State could prove that the statutory special issues embodied in former Article 37.071, (b), ought to be answered affirmatively.[2] It is not ineffectiveness, *per se,* however, for counsel to concentrate his efforts at the punishment phase in a capital murder case. Cf. *Holland v. State,* 761 S.W.2d 307, at 314–15 (Tex.Cr.App.1988) (it is acceptable strategy in capital prosecution to plead guilty before the jury, and courts will not second-guess that strategy). It appears counsel's trial strategy was to persuade the jury to find his

client did not act "deliberately," and thus answer "no" to the first special issue, and to have applicant acknowledge and accept responsibility for his crimes as a first step to rehabilitation, in an effort to persuade the jury to return a "no" answer to the second special issue.

## II.

### A.

In this post-conviction application for writ of habeas corpus applicant first complains that counsel effectively abandoned youth as a basis for the jury to impose a sentence of less than death. The record reveals that, without objection, the prosecutor secured a commitment during the voir dire of each venireman who was eventually selected to serve on the jury that he or she would not let "the youthful appearance and age of a defendant ... affect your deliberations on punishment." For example, in questioning venireman Billy Davis, the prosecutor inquired:

"Q. All right, sir. Can you assure me that the youthful appearance or age of a defendant would not affect your deliberations?

A. (Prospective juror shaking head.)

Q. All right, sir. Because again, we focus back on the questions. If the evidence calls for yes answers, it doesn't matter how old or young someone is.

A. That's irrelevant."

Davis sat on the jury. Similarly, the prosecutor questioned venireman J.D. Wallace as follows:

---

1. This is applicant's second post-conviction application for writ of habeas corpus. This Court denied relief in his first application in an unpublished opinion. Ex parte Davis, (Tex.Cr.App., No. 66,930, delivered September 13, 1989).

2. At the time of applicant's trial in 1978, Article 37.071, (b)(1) & (2), and (e), V.A.C.C.P., read:

"(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reason-

able expectation that the death of the deceased or another would result;
(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

\*　\*　\*　\*　\*　\*

(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. If the jury returns a negative finding on any issue submitted under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life."

"Q. Can you assure me that the youthful appearance or age of a defendant would not affect your deliberations?

A. I believe I could.

Q. All right. Because the point is this: In determining the punishment, all that the jury is allowed to do is answer the questions. If you believe it's deliberate and if you believe there's a probability, then the age should not be a factor at all. To bring sympathy or bring in age or something else would be violating the Court's instructions saying that you're only to consider the evidence and only answer the questions. So you can't say, 'Well, in my own mind, even though I believe the evidence calls for yes answers, I don't think this is a death penalty case so I'm going to vote no.' You're bound by your oath as a juror to answer the questions based on the evidence and not based upon your personal feelings or whatever, but only on the evidence. And I take it from the answers thus far that you would be able to do that; is that correct?

A. I feel that I could, yes."

Wallace was also selected to serve on the jury. The prosecutor asked each of the twelve eventual jurors some variant of the basic "can you assure me the youthful appearance and age of a defendant won't affect your punishment deliberations" question, and each one agreed he or she would not. Then, during the summation at the punishment phase of trial, the prosecutor reminded the jury of its collective commitment to disregard applicant's youth:

"You promised me on voir dire that the age of the defendant was irrelevant, that the youthful appearance of a defendant was irrelevant. You told me that you could answer the questions based upon the evidence and not merely your personal desire. * * * My purpose in this argument is to hold you to that promise."

Applicant argues that counsel's failure to object to this commitment of the jury effectively deprived him of his Eighth Amendment right to a capital jury willing and able to consider all relevant evidence militating against imposition of the death penalty; and that this in turn violated his Sixth Amendment right to the effective assistance of counsel in his defense.[3]

### B.

■■■ Applicant forfeited his Eighth Amendment claim by failing to object at trial to the prosecutor's questions to eventual jurors and his remarks during punishment argument. See *Ex parte Crispen*, 777 S.W.2d 103 (Tex.Cr.App.1989). That youth is a relevant mitigating factor was a well known Eighth Amendment principle by autumn of 1978, when applicant was tried. See *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (Plurality opinion); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (Plurality opinion). It is true that after *Johnson v. Texas*, 509 U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993), the Eighth Amendment does not require jurors to consider the mitigating impact of youth beyond its relevance to the special issues. But it has been clear at least since *Jurek* that jurors must be empowered to consider the mitigating impact of youth as it bears upon the special issues, especially future dangerousness. Applicant should have known to object to any suggestion that jurors not take youth into account to that extent. Accordingly, applicant cannot (and perhaps for that reason, does not) argue that we should excuse his procedural default either because the basis for his objection would have been so novel as not to have been reasonably available at the time of his trial, or, certainly, because the law was so well settled against him as to render any objection at that time futile. *Black v. State*, 816 S.W.2d 350, at 368 (Tex.Cr.App.1991) (Campbell, J., concurring, joined by McCormick, P.J., and Clinton, Overstreet, Maloney & Benavides, J.J.). We therefore reject applicant's Eighth Amendment claim.

---

**3.** Applicant also invokes the state constitutional analogs for the Sixth and Eighth Amendments, but makes no independent argument under these provisions. We will not pursue applicant's arguments under the Texas Constitution for him. See *Johnson v. State*, 853 S.W.2d 527, at 533 (Tex.Cr. App.1992).

### C.

■ Applicant claims counsel rendered ineffective assistance of counsel under the Sixth Amendment in failing to object to the commitment of the jurors, and thereby forfeiting applicant's Eighth Amendment right to a jury able to consider his youth in mitigation of punishment. The operative test for determining whether an accused has suffered a deprivation of his Sixth Amendment right to effective assistance of counsel is that articulated in *Strickland v. Washington*, 466 U.S. 668, at 687, 104 S.Ct. 2052, at 2064, 80 L.Ed.2d 674, at 693 (1984), *viz:*

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result was reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

Given counsel's apparent strategy at the punishment phase of trial, it is hard to imagine that his failing to object was purposeful. Counsel was clearly attempting to paint his client as a penitent, willing to take responsibility for his offense, and therefore capable of rehabilitation. It would seem that emphasis on applicant's youth at the time of the offense would jibe, not conflict, with such a strategy. Indeed, counsel argued at the punishment phase that applicant "is still young. He still has an enormous amount of maturity if you see fit to spare him, to grow and to comprehend[.]" On the state of the record we might well conclude that counsel's error in failing to object to the prosecutor tailoring a jury to ignore youth as a factor in answering special issues was an error so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. We need not resolve that question, however, for in any event we conclude that applicant has not shown he was deprived of "a trial whose result was reliable."

■ In fleshing out the second, "prejudice" prong of its test for ineffective assistance of counsel, the Supreme Court observed:

> "When a defendant challenges a death sentence ..., the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balancing of aggravating and mitigating circumstances did not warrant death."

*Strickland v. Washington*, U.S. at 695, S.Ct. at 2069, L.Ed.2d at 698. Moreover, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, U.S. at 694, S.Ct. at 2068, L.Ed.2d at 698. Unlike Florida, where *Strickland* arose, we do not have a capital sentencing scheme that involves the direct balancing of aggravating and mitigating circumstances. The jury in a capital case under former Article 37.071, V.A.C.C.P., was simply called upon to answer the statutory special issues. After *Johnson v. Texas*, supra, the capital sentencer is not required to give youth any mitigating consideration beyond its relevance to the second special issue. Consistent with *Johnson* we conclude that the question under the "prejudice" prong of *Strickland* boils down to whether, but for counsel's failure to object, there is a reasonable probability—that is, a probability sufficient to undermine confidence in the outcome—that the jury would have answered the second special issue differently. On the facts presented at the punishment phase of this cause, we cannot say there is.

Evidence at the punishment phase of trial revealed that by the time he was ten years old applicant was skipping school and stealing bicycles. At twelve he was sent to a detention home for boys for a year, and before he was fifteen he returned there twice. At fifteen applicant landed in the reformatory at Gatesville for eighteen months. At seventeen he was convicted of three instances of aggravated robbery and one instance of burglary of a habitation, and was assessed four concurrent six year sentences. In one of the aggravated robberies

applicant used a pistol, and when police tried to apprehend him, he took a hostage. In another aggravated robbery he wielded a butcher knife. At the time of his arrest for the instant offense applicant confessed that between the time of his parole and his arrest he committed at least five robberies and thirteen burglaries. Only five days after killing Lang, applicant returned to burglarize the Red Wing Ice Cream Company. Applicant estimated that from the age of twelve up to the day of trial he had spent only a year and a half outside institutional walls. He admitted that in that brief time he committed over twenty violent or potentially violent felony offenses.

In *Johnson v. Texas*, supra, the Supreme Court observed that "the ill effects of youth that a defendant may experience are subject to change and, as a result, are readily comprehended as a mitigating factor in consideration of the second special issue." 509 U.S. at ——, 113 S.Ct. at 2670, 125 L.Ed.2d at 307. In other words, a jury may find youth mitigating within the context of the second special issue in the sense that, and to the extent that, if his violent conduct is a product of his youth, he may be expected to outgrow it. A jury confronted with applicant's extensive history of crime and incarceration, however, is not reasonably likely to find he will outgrow his violent tendency. While twenty-one must be considered youthful for Eighth Amendment purposes, *Lockett v. Ohio*, supra, it is at least on the cusp of mature adulthood. Applicant's jury would have been more than justified to find from his past conduct that a pattern had been set that was not likely to change as whatever remained of the "transient qualities" of his youth passed on. Even had applicant's jury been disabused of the idea that youth was irrelevant to the second special issue, there is no reasonable probability—none sufficient to undermine confidence in the outcome—that it would have found him capable of reforming his conduct as the "ill effects of youth" dissipate. And as we understand *Johnson*, no other mitigating aspect of youth need have been considered.

Because we see no reasonable probability that had counsel objected to the prosecutor committing the jury to disregard youth it

would have answered the second special issue any differently than it did, we hold applicant suffered no Sixth Amendment deprivation. *Strickland*, supra.

### III.

■ Applicant complains similarly that counsel was ineffective in failing to object when the prosecutor obtained a commitment from the eventual jurors during voir dire that they would not let personal opinion whether applicant should receive the death penalty prevent them from answering the special issues strictly in accordance with the evidence. Counsel also failed to object when the prosecutor reminded the jurors at the punishment summation that "[y]ou told me [during voir dire] that you could answer the questions based upon the evidence and not merely your personal desire." However, applicant points to no mitigating evidence he claims cannot be given at least some mitigating effect within the scope of the special issues. Absent such evidence, applicant's jury had no lawful basis for imposing a sentence less than death on any basis other than the evidence as it pertained to special issues. See *Johnson v. Texas*, supra; *Graham v. Collins*, 506 U.S. ——, at ——, 113 S.Ct. 892, at 902, 122 L.Ed.2d 260, at 275–76 (1993). See also *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). In short, we do not perceive that the prosecutor erred to voir dire and argue to the jury as he did. Perforce, applicant's counsel did not render ineffective assistance of counsel in failing to object.

### IV.

■ Applicant also argues that counsel was ineffective for failing to object during the State's summation at the punishment phase when the prosecutor argued that "intentional" and "deliberate" mean the same thing. The State replies that this argument was invited by defense counsel's earlier argument to the jury that it should look for evidence of premeditation before answering the first special issue "yes." As of the time of trial, however, this Court had neither clearly held that "intentional" and "deliberate" must be

accorded different meanings, nor that it was improper to suggest to a jury that "deliberate" may be understood to embrace an element of premeditation.[4] All that Court had said for sure as of autumn of 1978 was that terms from Article 37.071 such as "deliberate" are words of common meaning that need not be specially defined in the jury charge. *King v. State,* 553 S.W.2d 105 (Tex.Cr.App. 1977). It is not surprising that neither the State nor applicant's counsel objected to the argument of the other, for it was certainly within the realm of objective reasonableness for the parties in 1978 to consider the scope of the word "deliberate" in common acceptation to be wide enough to accommodate argument for a meaning as broad as "premeditated" or as narrow as "intentional." To hold otherwise now would be to engage in the kind of hindsight examination of effectiveness of counsel the Supreme Court expressly disa-

vowed in *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. We hold that counsel's performance in this cause was not constitutionally defective for failing to assail the state's characterization of "deliberate" as the same as "intentional."

### V.

In an oral statement applicant made to police before his written confession, he told a police detective, "I had to shoot [Lang]. He was going to take the gun away from me," or "I had to shoot the man, because I figured he would take the gun away from me." Trial counsel for applicant unsuccessfully tried to admit this statement at the guilt phase of trial. See *Davis v. State,* supra, at 360. Applicant contends that counsel was ineffective in failing to elicit this evidence later in mitigation of punishment.[5]

**4.** The holding that "deliberate" and "intentional" do not mean the same thing may have been "implicit" in our caselaw as early as 1977, in *Brown v. State,* 554 S.W.2d 677 (Tex.Cr.App. 1977). See *Esquivel v. State,* 595 S.W.2d 516, at 530, n. 5 (Tex.Cr.App.1980) (Clinton, J., dissenting). But otherwise even the Court itself seemed to understand intentional and deliberate to carry the same meaning. *Blansett v. State,* 556 S.W.2d 322, at 327, n. 6 (Tex.Cr.App.1977). See also *Morin v. State,* 682 S.W.2d 265, at 271 (Tex.Cr.App.1985) (Clinton, J., dissenting to denial of appellant's motion for rehearing); *James v. State,* 772 S.W.2d 84, at 105, 107 & n. 9 (Tex.Cr.App. 1989) (Clinton, J., dissenting). An express holding that the terms are not synonymous did not come until well after applicant's trial, in *Heckert v. State,* 612 S.W.2d 549 (Tex.Cr.App.1981).

This Court made clear as early as 1976 that in conducting a sufficiency review of evidence to support the first special issue we would not require evidence of premeditation, since "[t]he statutory requirements that appellant's conduct be committed *deliberately* does not mean that it must be a *premeditated* act." *Granviel v. State,* 552 S.W.2d 107, at 123 (Tex.Cr.App.1976) (emphasis in the original). That this Court should find premeditation is not a prerequisite to upholding an affirmative answer to the first special issue did not necessarily mean, however, that a jury would not be entitled to construe "deliberate" to encompass an element of premeditation, if that was within the jury's understanding of the common meaning of the word. It simply meant a jury would not *have* to construe "deliberate" to require evidence of premeditation, and if no such evidence was presented, this Court would presume the jury did not understand "deliberate" so broadly, and would decline to hold the evidence insufficient on that account. It was not until

*Fearance v. State,* 620 S.W.2d 577, at 584 & n. 6 (Tex.Cr.App.1981) (Opinion on appellant's motion for rehearing), that it was suggested that "deliberation is but an element of premeditation[,]" rather than vice-versa. See also *Russell v. State,* 665 S.W.2d 771, at 784 (Tex.Cr.App. 1983) (Clinton, J., dissenting). This suggestion was apparently elevated to a holding in *Nichols v. State,* 754 S.W.2d 185, at 201 (Tex.Cr.App. 1988), that "deliberate" is, as a matter of law, "something less than premeditation[.]" See also *White v. State,* 779 S.W.2d 809, at 823 (Tex.Cr.App.1989) (State's challenge for cause against venireman who would essentially require evidence of premeditation properly sustained).

**5.** Applicant also contends that the trial court erred in failing to admit this statement at the guilt phase of trial. This argument was rejected on direct appeal. Unless he can identify a constitutional or fundamental dimension to this claim, it is not now cognizable in a collateral attack under Article 11.07, supra. See *Ex parte Banks,* 769 S.W.2d 539, at 540 (Tex.Cr.App. 1989). The only constitutional argument he raises is that allowing the jury to deliberate at the punishment phase without benefit of this mitigating evidence was a violation of the Eighth Amendment. However, he was free to re-offer this evidence at the punishment phase of trial. Its relevance to the first special issue would have been as evident at the time of trial as it is today. As we similarly concluded *ante* with respect to applicant's youth, trial counsel had no excuse for forfeiting any Eighth Amendment claim by failing to re-offer the evidence at the punishment phase. He may only be heard now to complain of the ineffectiveness of his counsel in failing to re-offer his oral statement.

Applicant's oral statement was clearly relevant to the first special issue, bearing upon the deliberateness of applicant's conduct. In our view, however, counsel for applicant may well have made a legitimate tactical decision not to bring out applicant's statement at the punishment phase because it was potentially inconsistent with his strategy to have applicant accept responsibility for his conduct and argue that he could be rehabilitated, in an effort to coax a "no" answer to the second special issue.

Several eyewitnesses testified at the guilt phase of trial that just before Lang was shot, he had been walking toward the door where applicant stood. One of these witnesses admitted making a prior statement to police in which he had asserted that Lang had "started toward [applicant] real fast like he knew he didn't belong there." From photographs in the record it appears Lang fell forward, his head only three or four feet from the doorway. Applicant himself testified at the punishment phase of trial that he had not planned or intended to shoot anyone when he entered the office: "Like I said, really [Lang] scared me just as much as it probably scared everybody in that room." Thus, counsel developed evidence from which a jury might rationally conclude that applicant's decision to shoot Lang, while intentional, was nevertheless impulsive, reactive to a perceived danger, borne out of fear, and therefore arguably not "deliberate"—evidence that served the same function as the statement applicant now claims should have been elicited.

■ Having already presented evidence to the same effect as the oral statement, counsel for applicant may well have made a tactical decision to forgo offering the statement itself as being, in tone if not entirely in content, inconsistent with his approach to the second special issue. The jury had heard evidence at the guilt phase that Lang had instructed his drivers never to resist an armed robbery. While there is of course no evidence that applicant knew this, it might provide a basis for the jury to reject as unreasonable applicant's interpretation that Lang's conduct was provocative or threatening. Another eyewitness, Lang's son, testi-

fied that before Lang was shot, he had stopped, begun to back up, and thrown his hands up. In the premises applicant's statement that he believed Lang meant to disarm him might be construed by the jury as simply a disingenuous attempt to deflect personal responsibility, an attitude at odds with the apparent strategy to have applicant acknowledge all guilt as a predicate to rehabilitation. We have said that fear of juror backlash is an acceptable strategic reason to forego full development of relevant mitigating evidence at the punishment phase of a capital prosecution. *Rosales v. State*, 841 S.W.2d 368, at 376–78 (Tex.Cr.App.1992). Of course we do not know for certain that trial counsel was motivated in this way, or even that his decision was a strategic one at all. But under *Strickland* we must presume that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Delrio v. State*, 840 S.W.2d 443, at 447, quoting 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Applicant has failed to overcome that presumption.

*VI.*

■ Applicant next claims counsel should have objected when the prosecutor informed jurors during his punishment summation that "you don't have to believe beyond a reasonable doubt that he will commit acts of violence in the future but that there's a probability he will commit them in the future, that he's likely to commit them in the future." Under former Article 37.071, (b)(2) & (c), a capital jury must find beyond a reasonable doubt that there is a probability the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Applicant's precise complaint here is less than clear, but it may be he is contending that the prosecutor's remark could be construed as reducing the standard of proof by which the probability of future dangerousness must be found to something less than proof beyond a reasonable doubt. It seems at least as likely, however, if not more so, that the prosecutor was simply conveying to the jury that what it must find beyond a reasonable doubt is not that applicant *will*, *certainly* commit future acts of violence, but that he *probably* will. This latter under-

standing of the prosecutor's remark is in all things consistent with former Article 37.071 itself. We cannot reasonably fault counsel for failing to detect in the heat of trial an ambiguity that is only apparent to us after careful reflection on the cold record. Counsel was not ineffective in failing to raise this objection.

### VII.

Finally, applicant contends he received ineffective assistance of counsel on appeal. Applicant was represented on appeal by trial counsel. He now contends that counsel should have raised all of the above claims of ineffectiveness at trial for resolution on direct appeal. But because appellate counsel also tried the case, applicant contends he had a conflict of interest that prevented him from assailing his own trial effectiveness. Having found for Sixth Amendment purposes that applicant obtained effective assistance of counsel at trial, however, we hold that appellate counsel did not render ineffective assistance in failing to raise his own ineffectiveness at the trial level.

The relief prayed for is denied.

MALONEY, J., dissents.