**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-11388

MICHAEL ROSALES,

Petitioner-Appellant,

versus

JANIE COCKRELL, Director, Texas Department
of Criminal Justice, Institutional Division,

Appellee-Respondent.

Appeal from United States District Court
for the Northern District of Texas

August 16, 2002

Before DAVIS, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Petitioner Michael Rosales ("Rosales"), convicted of capital murder in Texas and sentenced

to death, requests from this Court a Certificate of Appealability ("COA") pursuant to 28 U.S.C.

§ 2253(c). For the reasons set forth below, we DENY the COA.

FACTUAL AND PROCEDURAL BACKGROUND[1]

[*]Pursuant to 5ᵀᴴ CɪR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CɪR. R. 47.5.4.

[1]The following factual background is taken primarily from the facts found by the federal and state habeas courts.

Rosales confessed to murdering sixty-eight-year old Mary Felder ("Felder") on June 4, 1997, in the course of a burglary of her apartment. Rosales's confession came after the police confronted him with pictures of his bloody clothing recovered in Rudy Perez's ("Perez") apartment, where Rosales had been staying with Perez and Yesinia Olivas ("Olivas"), their children, and their niece, Corinna Cantu ("Cantu"). Felder lived next door to Perez and his family. Rosales signed the following statement:

> I am giving this statement and I only want to make one request, that I don't deserve to live, and I want the lethal injection or the gas chamber for me as soon as possible because I don't want to live after I tell Detective Martinez the truth about what happened. I want to say Tuesday night, I was smoking some rock cocaine, and I think I smoked about $50 worth. I had run out of money and cocaine. So, sometime early Wednesday morning, I think it was about 3:00 o'clock or 4:00 o'clock a.m., I went to Ms. Mary's apartment to see if I could steal something from her, like a VCR, so I could trade it and score some more cocaine. When I got to her apartment, there was a mop by the door on the outside, and I used it to break a small window on the door so I could get in. I unlocked the door and went inside her apartment. I went into her bedroom and started looking around. Ms. Mary woke up and started to get up. I was kneeling down by the bed, but when she got up, she stepped on me. She recognized me. She called me by my name and told me that she was going to call the police. She grabbed me by the front of my shirt, and I grabbed her by the wrists. I then pulled her off the bed and grabbed her by the hair. I took her into the kitchen and told her that I did not want to hurt her. She kept hitting me. I grabbed a steak knife off the kitchen table and dragged her back to her room. She kept talking about the police and started yelling. I told her to keep it down, but she kept yelling. I then started stabbing her. I think I stabbed her in the stomach first, and she fell where you found her. I then kept stabbing her. I told her that I was sorry and asked her to die, but she kept breathing. I started to leave at one point after I had stabbed her, but she was still alive, so I went back, and I started stabbing her on her neck or her chest. I think I was in there with her for about 30 minutes. I then left her apartment, but I took the knife with me. I walked to the 6th Street gate from the complex and walked across the street to the alley and threw the knife away. I know she was still breathing when I was leaving because I could hear her choking on her blood. After I threw the knife away, I went to apartment number 18 and went inside and went to bed. I did not leave the apartment until in the morning. Before I went to bed, I went into the restroom and cleaned my arms off because I had a lot of blood on them. I also changed clothes and put the bloody clothes I had on with Yesinia's dirty clothes. The next day, I soaked the shirt to get the blood off. I want to say that

2

I did not go into Ms. Mary's apartment to kill her. I just wanted to just steal something from her. I also just want to die as quick as she did.

After signing the confession, Rosales led police officers to a dumpster where the police uncovered a white trash bag containing a bloody knife with a four-and-a-half inch blade that was bent upwards, a bloody two-pronged kitchen fork with the tongs bent backwards, and a bloody pair of needle nose pliers. DNA testing revealed that the blood on these instruments and the blood on Rosales's clothing was consistent with Felder's blood. Further, DNA analysis showed that blood samples taken from the bathroom sink in Perez's apartment were consistent with both Felder's blood and Rosales's blood and that a sample taken from the front door of the apartment was consistent with Felder's blood. Additionally, the police recovered a pair of tennis shoes belonging to Rosales that matched bloody shoe prints found at the crime scene.

A forensic pathologist testified that Felder died of multiple stab wounds to the head and neck. The pathologist testified that Felder suffered a total of 113 wounds. Of these, five were lethal, and only two were inflicted after Felder died. According to the pathologist, the patterns of the 108 non-lethal wounds suggested an intent to inflict pain and Felder's death was "very painful."

In May of 1998, Rosales was convicted by a jury of capital murder for the murder of Felder in the course of a burglary and was sentenced to death. On direct appeal, the Texas Court of Criminal Appeals affirmed. Rosales v. State, 4 S.W.3d 228 (Tex. Crim. App. 1999). The United States Supreme Court denied Rosales's petition for a writ of certiorari. Rosales v. Texas, 531 U.S. 1016 (2000).

Thereafter, Rosales filed an application for state habeas relief. On February 28, 2000, the trial court adopted the State's proposed findings of fact and conclusions of law, and recommended that

3

relief be denied. The Texas Court of Criminal Appeals adopted the trial court's findings and conclusions, and denied relief on April 12, 2000.

On November 29, 2000, Rosales filed a federal habeas petition, raising the same grounds for review raised in his state habeas application. The State moved for summary judgment. On September 25, 2001, the district court granted the State's motion and entered final judgment denying Rosales's § 2254 petition.

Pursuant to § 2253(c), Rosales filed a request for a COA from the district court. On November 16, 2001, the district court incorporated by reference its September 25th order and judgment and denied this request. Rosales now requests a COA from this Court.

STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), before an appeal from the dismissal or denial of a § 2254 habeas petition can proceed, a petitioner must obtain a COA. § 2253(c)(2). A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right. Id. To make a "substantial showing," the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." Tennard v. Cockrell, 284 F.3d 591, 594 (5th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Where the district court rejects a prisoner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a COA should issue when the prisoner shows, at least, that jurists

4

of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In determining whether a COA should be granted, we are mindful of the deferential scheme laid out in the AEDPA. Tennard, 284 F.3d at 594. Federal courts defer to a state court's adjudication of a petitioner's claims on the merits unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The standards set out in § 2254(d), however, do not apply where the state court denied the petitioner's claim on procedural grounds. See Valdez v. Cockrell, 274 F.3d 941, 946-47 (5th Cir. 2001). Further, state court findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

DISCUSSION

In his petition for COA, Rosales makes ten claims that fall within the following categories: (1) violation of his right not to be compelled to be a witness against himself under the Fifth Amendment, (2) violation of his right to confront a witness under the Sixth Amendment, (3) violation of his due process and equal protection rights under the Fourteenth Amendment, and (4) ineffective assistance of counsel under the Sixth Amendment.[2] We will address each argument in turn.

---

[2]Rosales has not raised the following claim that was asserted in both his state and federal habeas applications: ineffective assistance of counsel because his appellate counsel failed to argue on direct appeal that Rosales was entitled to a life sentence because there was insufficient evidence

5

I.      Procedural Default

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Rosales claims that his Fifth Amendment right against self-incrimination was violated when the State was allowed to comment on his silence. Specifically, Rosales contends that his constitutional right was violated when the prosecutor asked Dr. Walter Quijano on cross-examination whether he had interviewed Rosales to assist him in forming his opinions.[3]

---

on the jury's finding of future dangerousness. Thus, he has abandoned this issue. See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).

[3]The following exchange occurred between the prosecutor and Dr. Quijano:
Q:    Did you have a chance to interview the defendant before you made your
      opinion?
A:    No.
Q:    Having done this many different times, you know that there's kind of a split
      of ideas on whether you should interview a defendant, right?
A:    Yes.
Q:    There's that age old proposition that says the State cannot interview a
      defendant because that wouldn't be fair to him and make him give[] up his
      rights, right?
A:    Yes.
Q:    And then, the other side of that coin is the defendant can have the individual
      evaluated and looked at for that opinion, right?
A:    Yes.
Q:    But did you interview the defendant or talk to him at all?
A:    No.
Q:    Would you have found any value in what he said to you?
Defense Counsel:      Your Honor, I'm going to object. We're getting very close to
                      the defendant's right not to testify.
Court: Overruled

6

The state habeas court determined that Rosales's Fifth Amendment claim was procedurally barred under Texas's contemporaneous objection rule, concluding that Rosales's counsel failed to make a timely objection because "[t]he question had been asked and answered at least twice before there was an objection." The state court also found that this claim should have been raised on direct appeal and thus a habeas proceeding was not the appropriate vehicle. Moreover, the state court determined that even if the claim was not procedurally barred, the prosecutors's statements were not comments on Rosales's post-arrest silence. Further, the state court determined that even if there was a Fifth Amendment violation, Rosales failed to demonstrate that the error was harmful under Brecht v. Abrahamson. 507 U.S. 619, 637-38 (1993) (holding that habeas relief cannot be granted on constitutional trial errors unless the petitioner demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict").

The district court concluded that Rosales's Fifth Amendment claim was procedurally barred from federal habeas review. Further, addressing the state court's alternate holding that the prosecutor's comments did not violate the Fifth Amendment, the district court found that Rosales failed to demonstrate that the remarks were harmful and thus concluded that the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

Rosales maintains that his claim is not procedurally barred because his counsel made an objection at the end of a line of questioning. "The Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims." Styron v. Johnson, 262 F.3d 438, 453 (citation and internal quotations omitted).

---

Q:     Do you think there would have been any value, clinically, in talking to the defendant?
A:     Sure.  The more information I can get, the better.

7

Despite Rosales's contention that the contemporaneous objection rule only applies when there is *no* objection, the Texas Court of Criminal Appeals cases interpreting the rule have held that objections should be made as soon as the ground for objection becomes apparent. E.g., Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). Moreover, if a question clearly calls for an objectionable response, defense counsel should make an objection before the witness responds. Dinkins, 894 S.W.2d at 355. "If he fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." Id.

The record supports the determination that trial counsel did not timely object because the question regarding Rosales's Fifth Amendment right to remain silent was asked and answered twice before counsel objected. Rosales has not argued or demonstrated cause and prejudice for the procedural default or that imposition of the procedural bar would constitute a miscarriage of justice. Thus, we find that Rosales's Fifth Amendment claim is procedurally barred. Thus, we decline to address the merits of this claim. We conclude that since the district court's determination that habeas review of Rosales's claim had been procedurally defaulted is not debatable among reasonable jurists, Rosales has failed to make a substantial showing of the denial of a constitutional right.

Rosales argues that his rights under the Confrontation Clause of the Sixth Amendment were violated by the trial court's improper limitation of cross-examination. Specifically, Rosales contends that his right to confrontation was violated because the trial court prohibited him from using an unauthenticated copy of a portion of a transcript from prior testimony by Dr. Mears in a trial in Midland, Texas to impeach Dr. Mears or refresh his recollection.

In alternative rulings, the state habeas court determined that this ground should have been raised on direct appeal rather than in a habeas application; trial counsel failed to preserve any error because no bill of exception or offer of proof regarding the contents of the transcript was made and the granting of a motion in limine is not sufficient to preserve error; the trial court did not abuse its discretion by granting the State's motion in limine to exclude the transcript; and even if the trial court ruled incorrectly, Rosales did not demonstrate that he was harmed by the error.

The district court determined that Rosales's Confrontation Clause claim was procedurally barred from federal habeas review because the state court's determination that this alleged error was not preserved for appeal, and therefore procedurally barred from review, was neither contrary to nor an unreasonable application of clearly established federal law. The district court also determined that there was no violation of Rosales's right to confront Dr. Mears because the trial court did not unduly restrict cross-examination of Dr. Mears. Moreover, the district court concluded that even if there was a violation, it was harmless error under Brecht.

Rosales contends that this claim is not procedurally barred because his trial counsel objected to limiting the cross-examination of Dr. Mears through conversations with the trial court, even if the word "object" was never used. It is well-established that the granting or denying of a motion in limine does not preserve error for appellate review under Texas law. E.g., Wilson v. State, 7 S.W.3d 136, 144 (Tex. Crim. App. 1999). When a motion in limine is granted, an offer of the evidence which was the subject of the motion must be made at trial to preserve a claim of improper exclusion. E.g., Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). Moreover, "Texas Rule of Criminal Evidence 103(a)(2) provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to

9

the court by offer of proof or was apparent from the context within which questions were asked."

Id. Even assuming that trial counsel objected, we conclude that the district court's determination that habeas review of Rosales's claim had been procedurally defaulted is not debatable among reasonable jurists. The trial court's grant of the State's motion in limine did not preserve error and the record supports the determination that Rosales's trial counsel never attempted to use the transcript at trial and never made an offer of proof at trial. Failure to preserve an issue for appeal constitutes an independent and adequate state ground upon which to base a procedural bar to federal review. See, e.g., Wheat v. Johnson, 238 F.3d 357, 360 (5th Cir. 2001). Rosales makes no attempt to show either cause or prejudice for this default or that imposition of the bar would constitute a miscarriage of justice. We therefore conclude that Rosales failed to make a substantial showing of the denial of a constitutional right.

Relying on Simmons v. South Carolina, 512 U.S. 154 (1994), Rosales argues that his rights under the Due Process and Equal Protection Clauses were violated by the trial court's failure to define "life sentence" and/or the failure to instruct the jury that if they imposed a life sentence, Rosales would not be eligible for parole for forty years.

In alternative holdings, the state habeas court determined that this ground should have been raised on direct appeal rather than in a habeas application; there was no contemporaneous objection to the failure to give the suggested instruction; there was no violation of the Due Process and Equal Protection Clauses; and Rosales did not demonstrate that he was harmed by the court's failure to give the suggested instruction.

The district court determined that Rosales's claim was procedurally barred from federal habeas review because the record supported the state court's finding that no contemporaneous

10

objection was made. Moreover, the court determined that the state court's adjudication of the merits was neither contrary to nor an unreasonable application of clearly established federal law.

Rosales contends that this claim is not procedurally barred by the contemporaneous objection rule. While Rosales concedes that no objection on this ground was made at trial, he urges that the "right not recognized" exception to the contemporaneous objection rule applies because at the time of his trial, Texas law barred judges from instructing juries on parole eligibility in capital cases and thus any objection would have been futile. The "right not recognized" exception excuses the failure to make a contemporaneous objection where the claim was so novel that the basis of the claim was not reasonably available at the time of trial, or the law was so well settled by the Texas Court of Criminal Appeals that an objection at that time would have been futile. Black v. State, 816 S.W.2d 350, 369 (Tex. Crim. App. 1991) (Campbell, J., concurring). Rosales's argument is without merit because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). We conclude that the district court's determination that habeas review of Rosales's claim is procedurally barred is not debatable among reasonable jurists. Because Rosales attempts to demonstrate neither cause nor prejudice, or that imposition of the bar would constitute a miscarriage of justice, Rosales failed to make a substantial showing of the denial of a constitutional right.

In an abundance of caution, we briefly address the merits of this claim in the alternative. Our case law clearly precludes Rosales from making a substantial showing regarding the denial of due process or equal protection rights with regard to this claim. Collier v. Cockrell, No. 01-10803, 2002 WL 1723930 (5th Cir. July 25, 2002) (rejecting arguments of a capital murder defendant sentenced to death that the failure to inform the jury that, if it elected to impose a life sentence, he would be

11

ineligible for parole for forty years violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment).

II.     Ineffective Assistance of Counsel

To prevail on his ineffective assistance of counsel claims, Rosales must show that (1) counsel's performance was deficient and (2) he was prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 688, 687 (1984). "Counsel's performance is considered deficient if it 'falls below an objective standard of reasonableness' as measured by professional norms." Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002) (quoting Strickland, 466 U.S. at 688). To establish prejudice, Rosales must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 494.

Rosales contends that he was denied the effective assistance of counsel because his appellate counsel failed to raise a claim on direct appeal regarding the State's violation of his Fifth Amendment right against self-incrimination.

The state habeas court determined that Rosales failed to show that his appellate counsel's failure to raise this claim on appeal was deficient performance because the issue was barred from direct review by Texas's contemporaneous objection rule and, even if the issue was not barred, the prosecutor's statements did not violate the Fifth Amendment. Moreover, the state court concluded that Rosales had not established prejudice.

The district court observed that Rosales's claim that his appellate counsel performed deficiently was essentially foreclosed because the Fifth Amendment issue was procedurally barred

12

from review, and found that the state court's conclusions were neither contrary to nor an unreasonable application of clearly established federal law.

Counsel is not deficient for failing to raise every nonfrivolous issue on appeal. United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000). For the reasons already set forth in our disposition of Rosales's Fifth Amendment claim, the ineffective assistance of counsel claim is without merit. Rosales's appellate counsel's failure to pursue the Fifth Amendment error was neither deficient performance nor prejudicial. Because Rosales has not demonstrated that reasonable jurists would find the district court's assessment of this ineffectiveness claim debatable, he has not made a substantial showing of the denial of a constitutional right.

Rosales also contends he was denied the effective assistance of counsel because his trial counsel failed to preserve for appeal the issue of whether his Sixth Amendment rights to confrontation were improperly limited by the trial court.

The state habeas court determined that trial counsel's failure to object to the trial court's limitation was not deficient because the right to confrontation was not improperly limited and Rosales's trial counsel attempted to impeach Dr. Mears on cross-examination about the resume he submitted at the previous trial and brought forth alleged inconsistences. Further, the state court found that Rosales did not establish prejudice because he failed to show how Dr. Mears would have been impeached by the transcript or how the transcript makes the verdict unreliable.

The district court concluded that the state court's denial of relief on this claim was neither contrary to nor an unreasonable application of clearly established federal law, observing that trial counsel's "failure to perfect the appeal may have been deficient performance in the strictest sense, but

13

because he ultimately cross-examined Dr. Mears with the discrepancies between his testimony in the previous trial and his testimony on direct in this case, Rosales cannot demonstrate [prejudice]."

Rosales's trial counsel was able to cross-examine Dr. Mears without the transcript, and Rosales has not shown that use of the transcript against Dr. Mears would have made his testimony any less believable. Because the district court's rejection of Rosales's claim for failure to establish the prejudice prong of Strickland is not debatable among reasonable jurists, Rosales has failed to make a substantial showing of the denial of a constitutional right.

Rosales's next argument is that his appellate counsel was ineffective for not raising this Confrontation Clause claim on direct appeal.

The state habeas court determined that Rosales failed to establish that his appellate attorney's representation was deficient because Rosales's right to confrontation was not denied and any alleged violation was either not properly preserved or harmless. The state court also concluded that Rosales failed to establish prejudice.

The district court found that the state court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law. The district court concluded that appellate counsel's performance was not deficient because it would have been futile for counsel to raise a claim that was procedurally barred. Further, the district court determined that Rosales cannot demonstrate that he was prejudiced by appellate counsel's failure to raise a meritless or harmless error.

For the reasons already set forth in our disposition of Rosales's Confrontation Clause claim, this claim is without merit. Appellate counsel's failure to pursue this claim on direct appeal was neither deficient performance nor prejudicial. The correctness of the district court's assessment of

14

the merits of Rosales's claim is not debatable among jurists of reason; thus, Rosales has not made a substantial showing of the denial of a constitutional right.

Rosales contends that he was denied the effective assistance of counsel because his trial counsel failed to investigate and present mitigating evidence during the punishment phase of trial. According to Rosales, his trial counsel should have presented evidence that Rosales faced extreme poverty while growing up, his father was an alcoholic who physically abused his wife and children, Rosales considered himself the "black sheep" of the family that "was not worthy of anything but the bottom," Rosales's special bond with his father was shattered after the death of his father, Rosales wanted to return to jail because it was "the only place where he felt secure and safe" and "did well," and he was not violent.

The state habeas court found that trial counsel hired a mitigation specialist, spoke with Rosales's family, made a decision not to call family members as witnesses because "he had elicited the most favorable information from one of [Rosales's] sisters during cross-examination during the punishment phase and . . . the other family members' testimony would have done more harm than good," and chose to rely upon expert testimony regarding future dangerousness as a trial strategy. The state court concluded that Rosales failed to show deficient performance and failed to establish prejudice.

The district court determined that the state court's resolution of this claim was neither contrary to nor an unreasonable application of clearly established federal law. The district court found that the additional mitigating evidence proposed by Rosales was cumulative and did not raise a reasonable probability that Rosales would have received a life sentence if counsel had presented it at trial. Further, the district court noted that the "failure to present mitigating evidence if based on

15

an informed and reasonable practical judgment, is well within the range of practical choices not to be second guessed." Drew v. Collins, 964 F.2d 411, 422 (5th Cir. 1992) (citation and internal quotations omitted).

The correctness of the district court's conclusion that there was no prejudice and, consequently, no ineffective assistance of counsel is not debatable among jurists of reason. Under the prejudice prong, the district court was "required to compare the evidence actually presented at sentencing with all the mitigating evidence contained in the post conviction record" and determine whether the additional mitigating evidence is so compelling that there is a reasonable probability that the jury would have determined that death was not an appropriate sentence. Neal, 286 F.3d at 241. Rosales's counsel presented the following evidence during the punishment phase: James Reynolds, custodian of records at Lubbock County Jail, testified that Rosales's demeanor and behavior did not indicate a need for placement in the highest security level at the jail; Detective Rey Martinez testified Rosales wrote a note to Felder's family apologizing for his actions and the note was admitted into evidence; Professor Jonathan Sorensen, a criminologist with a Ph.D. in criminal justice, testified that based on his age, prior convictions, and prior behavior while institutionalized, the probability that Rosales would commit another homicide was at or below 1%, the probability that he would commit a future act of violence was 10%, and Rosales was not likely to be a danger in the future; Dr. Quijano, who has a Ph.D. in clinical psychology, testified that Rosales was not likely to be a danger while incarcerated. Further, counsel cross-examined Rosales's sister, who testified that their immediate family consisted of ten siblings, the family was very poor and often did not have enough to eat, their father's death caused Rosales to start drinking, Rosales dropped out of school in eighth grade, only one of their brothers graduated from high school, all but one of their brothers had been

16

incarcerated, and she did not want to see Rosales die. Although the additional testimony from family members and neighbors may have bolstered the testimony presented, we agree that this additional testimony was essentially cumulative and that Rosales has not demonstrated a reasonable probability that he would have received a life sentence if his trial counsel presented evidence that Rosales had an abusive, alcoholic father, had a low self image, and wanted to return to jail. Thus, Rosales has failed to make a substantial showing of the denial of a constitutional right.

In another claim, Rosales argues that he was denied effective assistance of counsel because his trial counsel failed to investigate and present evidence during the guilt-innocence phase of trial that questioned his guilt of capital murder. Specifically, Rosales claims that trial counsel's performance was deficient because potential testimony existed insinuating that Felder's grandson, Lafayette Robinson ("Robinson"), may have murdered her, and several people claim to have seen Felder alive sometime between 7:00 and 8:00 a.m. on June 4th, thus contradicting the prosecutor's theory that Felder died between 3:00 and 4:00 a.m. Rosales also argues that trial counsel did not perform an objectively reasonable investigation.

The state habeas court considered Rosales's claim and determined that Rosales failed to show deficient performance and prejudice. Specifically, the state court determined:

> Evidence at the guilt/innocense phase was overwhelming that the Applicant committed the offense. Trial counsel filed a motion to suppress the Applicant's confession and vigorously contested the admission of the confession at a hearing. Trial counsel cross-examined the State's witnesses during the guilt/innocence phase. Trial counsel stated that he conversed with Applicant and reviewed the police reports and discovery from the prosecutor's office. He spoke with several of the police officers involved and viewed the physical evidence several times. Trial counsel determined that the Applicant's resources were best spent on investigating and presenting a punishment case. It is not ineffectiveness *per se* for counsel to concentrate his efforts at the punishment phase in a capital murder case. *Ex parte Davis*, 866 S.W.2d 234, 237 (Tex. Crim. App. 1993). In this case, it was not

17

deficient attorney performance to concentrate defense efforts on the punishment phase.

In addition, given the overwhelming evidence against the Applicant, the Applicant has failed to establish prejudice by the alleged deficient performance as the Applicant's allegations do not undermine the reliability of the guilty verdict.

The district court determined that the state court's finding that trial counsel was not deficient was a reasonable application of clearly established federal law and that the finding of no prejudice was neither contrary to nor an unreasonable application of clearly established federal law. Relying on both the factual findings of the state habeas court, as well as its own findings that Rosales and Robinson were given polygraph examinations, that the examiner advised that Rosales "was telling the truth" about acting alone and that Robinson "answered all of the questions honestly," and that these results were reported to Rosales's counsel, the district court determined that trial counsel's decision to focus on the punishment phase "was a strategic decision made after an objectively reasonable investigation of the facts and evidence." Further, the district court determined that Rosales could not demonstrate prejudice, given his confession, his knowledge of the location of the murder weapons, the forensic evidence, and the circumstantial evidence.

The district court's assessment of Rosales's claim is not debatable among reasonable jurists. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 490-91. "To show prejudice in regard to a claim that the attorney failed to raise a certain defense, the

18

petitioner must show that the defense likely would have been successful at trial." Mangum v. Hargett, 67 F.3d 80, 84 (5th Cir. 1995). Trial counsel's decision to concentrate on the punishment phase of trial, after an investigation that involved speaking to Rosales and several police officers and reviewing the prosecutor's file and physical evidence, was reasonable considering the overwhelming evidence of Rosales's guilt. See Williams v. Collins, 16 F.3d 626, 631-32 (5th Cir. 1994) ("This court has upheld decisions of counsel not to put on evidence in mitigation of culpability when the decisions result from a strategic choice."). Even assuming that counsel's performance was deficient, Rosales has not shown prejudice for essentially the reasons mentioned by the district court. Thus, Rosales has failed to make a showing of the denial of a constitutional right.

Rosales's next claim is that he was denied effective assistance of counsel because his trial counsel failed to impeach testimony of the State's witnesses during the guilt-innocence phase of trial. Specifically, Rosales claims that the testimony of Cantu and Perez was impeachable because Cantu was dating Rosales and Perez was a drug and alcohol abuser who physically abused his wife, was evicted, and threatened the apartment manager with a deadly weapon.

The state habeas court determined that Rosales's "evidence is based on mere conjecture and does not undermine the reliability of the verdict[,] given [his] confession to the police and two independent witnesses, the victim's blood found on [his] clothing and the sink where [he] was seen washing off blood, and [Rosales] taking the police to the secreted murder weapons."

The district court determined that Rosales failed to show the state court's adjudication of this claim was contrary to or involved an unreasonable application of federal law. Regarding Perez, the district court found that Rosales failed to demonstrate that trial counsel performed deficiently, noting that Perez testified that he had been arrested and convicted of "unlawfully carrying a concealed weapon" and that Rosales failed to show that evidence that Perez was a drug abuser and violent person was admissible. Further, the district court found that, in light of the overwhelming evidence of Rosales's guilt that was admitted through witnesses other than Perez, Rosales failed to show that failure to impeach Perez was prejudicial. Regarding Cantu, the court found that Rosales offered no evidence to demonstrate that counsel's failure to impeach Cantu prejudiced his defense.

The correctness of the district court's assessment of the merits of this claim is not debatable among reasonable jurists. Rosales has not shown that trial counsel performed deficiently by failing to further impeach Perez, whose credibility was already undermined by his arrest and previous conviction, or by failing to impeach Cantu with evidence that says nothing about her veracity. Further, Rosales has not shown that the outcome of the trial would have been different if trial counsel had impeached Perez and Cantu with such evidence. We find that Rosales has not made a substantial showing of the denial of a constitutional right.

In his final claim, Rosales contends that he was denied the effective assistance of counsel because his trial counsel failed to present at the punishment phase the opinions of two expert witnesses who believed that Rosales would not be a future danger to society. The State retained two psychologists, Dr. Thomas G. Allen and Dr. Ann Turpiville, to evaluate

Rosales's future dangerousness. Both psychologists reviewed information provided by the State, but neither interviewed Rosales. Both psychologists opined that Rosales most likely would not be dangerous in the future. The State provided copies of their opinions to Rosales's trial counsel, but decided not to call either psychologists as witnesses.

The states habeas court concluded that trial counsel made a reasonable tactical decision not to call Dr. Allen and Dr. Turpiville, specifically finding that (1) the investigator for the defense attempted to contact the two psychologists, but one refused to speak with the investigator and the other was out of the country; (2) trial counsel were "suspicious" of the two experts because they had initially been contacted by the State; and (3) trial counsel were "very secure" in the testimony of the defense's two expert witnesses and decided to rely on their testimony. Further, the state court concluded that Rosales failed to establish prejudice because similar testimony was elicited from the defense's two expert witnesses and the jury was made aware of Dr. Allen's opinion and the fact that he was initially hired by the State.

The district court found that the state court's conclusion that trial counsel made a "strategic decision" was not contrary to or an unreasonable application of clearly established federal law. The court concluded that Rosales failed to show that the failure to call Dr. Allen and Dr. Turpiville as witnesses was an "uninformed" decision, noting that the record shows that trial counsel read their opinions, attempted to contact them, were secure in the testimony of the defense's two expert witnesses, were "suspicious" of the psychologists because they were retained by the State, did not know what information was provided to the psychologists, and were apprehensive about being sandbagged. The district court also concluded that Rosales failed to demonstrate prejudice because an abbreviated version of Dr. Allen's opinion

21

was presented to the jury and trial counsel called two defense experts to testify about Rosales's lack of future dangerous. Specifically, the court noted that Dr. Mears, the State's expert, testified that he was aware that Dr. Allen had been contacted to review the evidence in this case; Dr. Mears was also questioned about whether he knew that it was Dr. Allen's opinion that Rosales would probably not commit acts of violence in the future; and Dr. Quijano testified that he had reviewed the reports of the State's experts, which stated that Rosales might become a "model prisoner" and that Dr. Allen described his violence as reactive.

We accord the state habeas court's factual findings a presumption of correctness pursuant to § 2254(e)(1), and Rosales has failed to rebut this presumption by clear and convincing evidence. As the state courts and the district court concluded, Rosales does not present evidence to support this allegation of ineffective assistance of counsel. Even if trial counsel were deficient in failing to call the State's two psychologists as witnesses, the district court's rejection of Rosales's claim on the basis that he failed to demonstrate prejudice is not debatable among reasonable jurists. Thus, Rosales failed to make a substantial showing of the denial of a constitutional right.

## CONCLUSION

Rosales has not made a substantial showing of the denial of a constitutional right. We therefore DENY his request for a COA.

DENIED.

22